### 77494. McCOY v. THE STATE.
(378 SE2d 888)

BIRDSONG, Judge.
Appellant Leon McCoy appeals his conviction of armed robbery. On October 28, 1987, at approximately 3:15 or 3:20 p.m., a black

male later identified as the appellant, entered the Video Junction store. The clerk on duty saw him enter. At that time other customers were in the store, and appellant walked around and inquired about store membership. He was told that it required three forms of identification and he informed the clerk that he did not have it. Appellant said that he had a friend who was a member, but he declined to give the clerk his friend's name. Appellant then walked around the store some more, picked up a movie, and talked about it. When he came to the adult movie section, appellant asked the clerk for a piece of paper on which to jot the names of movies. The clerk gave him a piece of cash register tape. The appellant appeared to be writing movie names on the tape. Only one other customer remained in the store. When that customer left, appellant walked behind the counter carrying a butcher knife, and demanded that the clerk give him the store's money. Upon seeing the knife the clerk momentarily froze, whereupon the appellant knocked her to the floor. The clerk then arose and gave the appellant the money from the cash register. The appellant lifted up the cash register tray and removed a $5 bill from among the checks which were underneath the tray. The appellant took over $100, according to the clerk, including loose change in quarters, dimes, and nickels. He also took rolls of coins, which the clerk believed to be rolls of pennies; and, the bills taken were in denominations of 20s, 10s, 5s, and 1s. The appellant grabbed the clerk by the arm and ordered her to go into the back room; however, she declined to go apparently for fear of being hurt. Appellant then struck the clerk again, knocking her underneath the counter. At this point the clerk feigned unconsciousness, and appellant departed the store. After the lapse of a few minutes, the clerk arose and called the police. She gave a description of appellant to the police over the phone. Patrolman Weaver responded to the call and entered the store. He found the clerk "very upset," and he talked to her, "calmed her down," obtained more information from her, and "put it over the radio." The clerk described the offender as being a black male with a scraggly beard who was wearing blue jeans, a light blue shirt, a blue jacket, and grey shoes.

A short time after 3:26 p.m., Detective Faulk observed a black male standing in front of a trailer at the Cozy Court Trailer Park. When the subject spotted the police car, he began to run. Detective Faulk and Patrolman Rachels pursued the fleeing subject; Faulk fired a warning shot. The appellant stopped and was apprehended by the two officers. The appellant was wearing a blue shirt, blue jeans and grey shoes when apprehended; he did not have a blue jacket in his possession. A subsequent search of appellant revealed that he was carrying about $128. After appellant was taken to the station, a roll of nickels and a roll of pennies were found underneath the patrol car seat in which appellant had been sitting. The total money found in-

cluded a roll of pennies, a roll of dimes, a roll of nickels, $41 in $1 bills, loose change, and approximately $70 in $5 and $10 bills.

After his apprehension, and approximately ten minutes after the incident was reported, appellant was driven to the Video Junction store. A police officer entered the store and informed the clerk that they "had a gentleman out in the car and could [she] come outside to see if it was [the perpetrator of the crime], and to identify him." The clerk also was asked "[i]s this the one that could have robbed you." Although the car window was rolled up, the clerk saw the appellant and did not "exhibit any hesitation in her identification" of him as the perpetrator of the robbery. The clerk observed that, except for the blue jacket, appellant was wearing the same clothing he had worn during the robbery, including the grey shoes.

The appellant testified that he did not commit the robbery and asserted an alibi defense. His sister and her son testified in corroboration of his alibi claim. Appellant's alibi was that he was at home in his sister's house doing his ironing and other personal chores at the time of the robbery. Appellant claims he subsequently left the apartment to go to the grocery store and was arrested, and that he was carrying cash as he had recently cashed his paycheck. *Held*:

1. Review of the transcript "reveals ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of [the offense] charged." *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Appellant asserts that the trial court erred in denying his motion for directed verdict, as his conviction of armed robbery (using a knife) and his acquittal of aggravated assault (with a knife) constituted an inconsistent verdict.

The inconsistent verdict rule in criminal cases has been abolished in this state. *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216); *Robinson v. State*, 257 Ga. 194 (3) (357 SE2d 74). This assertion is without merit.

3. Appellant asserts that the trial court erred in refusing to grant a mistrial or to strike the eyewitness testimony from the record, as the eyewitness' testimony, in which she identified appellant as the perpetrator of the offense, was impermissibly tainted by suggestive and improper police conduct. We disagree.

In determining whether a due process violation occurred in the conduct of the pretrial confrontation between the eyewitness and the appellant, the test is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Selbo v. State*, 186 Ga. App. 779, 781 (368 SE2d 548); compare *Pack v. State*, 182 Ga. App. 618, 619 (356 SE2d 557). In this determination, the following factors will be considered: (a) opportunity to view the defendant at the time of the offense

(the witness had a substantial period of time in which not only to view but also to converse with appellant, and the offense occurred in the afternoon); (b) the witness' degree of attention (the witness exhibited an extremely high degree of attention as reflected by her detailed testimony as to the appellant's conduct in the store); (c) the accuracy of the witness' prior description (the description of appellant particularly in regard to his clothing was very accurate); (d) the level of certainty demonstrated (the witness made her pretrial identification of appellant without exhibiting any hesitation, and at trial the witness testified that there was no doubt in her mind that it was appellant in the store); and, (e) the length of time between the crime and the identification (in this case an unusually short period of time elapsed before identification). See generally *Pack*, supra. Thus, we find that there exists no substantial likelihood of irreparable pretrial misidentification of appellant.

Moreover, notwithstanding any taint in pretrial identification procedures, the witness' in-court identification may still be admitted if it has an "independent origin" from the illegal identification procedures involved. *Selbo*, supra at 780; *Foster v. State*, 156 Ga. App. 672 (2) (275 SE2d 745). Considering the totality of the circumstances, we find the eyewitness' identification had such an independent origin.

4. In questioning the eyewitness regarding the type of weapon used by the assailant, the prosecutor used and openly displayed in the jury's presence a knife which was neither used in nor similar to the knife used in the robbery. The knife was not introduced in evidence. Appellant asserts that the trial court erred in allowing this procedure, as the risk of prejudice outweighed the probative value, if any, that the knife displayed would have.

The facts of this case differ from those in *Walker v. State*, 186 Ga. App. 61 (2) (366 SE2d 400). However, the resulting error was harmless, as the evidence of guilt was so overwhelming "it is 'highly probable that the error did not contribute to the judgment.' " *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

5. Appellant asserts that the trial court erred when it refused to grant a mistrial in view of alleged improper questioning and comments by the prosecutor regarding appellant's right to remain silent.

The argument of counsel is not contained in the trial record, neither has any apparent attempt been made, under OCGA § 5-6-41, to supplement or otherwise preserve the dialogue at issue. Normally, such a deficiency could preclude review of this enumeration of error. However, the record does disclose the following comment by the prosecutor, "[appellant] testified that [the police] had to go into his wallet to find out where he lived and I said that was his privilege and that he had the right to remain silent." The record also reflects that after making a motion for mistrial appellant's counsel requested that the

court "give us a directed verdict of acquittal in his case," and that it was this latter motion that was denied by the court.

We are satisfied from the posture of the trial record that appellant voluntarily abandoned his motion for mistrial and substituted therefor a motion for directed verdict of acquittal. It was not error to deny the motion for directed verdict of acquittal. "It is only when the evidence demands a verdict of 'not guilty' that it is error for the trial court to refuse to grant a motion for a directed verdict of acquittal." *Payne v. State*, 184 Ga. App. 366 (1) (361 SE2d 666). The evidence in the case sub judice is not in this posture. See Division 1.

Moreover, assuming arguendo appellant had not abandoned his motion for mistrial, we are convinced that the argument made in the jury's presence did not contain a clear comment on the defendant's decision to remain silent, and thus did not generate error. Compare *Jordan v. State*, 239 Ga. 526 (3) (238 SE2d 69) and *Mitchell v. State*, 226 Ga. 450 (4) (175 SE2d 545). Further, even if error of constitutional magnitude had occurred, we find that it would be harmless beyond a reasonable doubt in light of the overwhelming evidence of appellant's guilt. See *Palmer v. State*, 186 Ga. App. 892, 897 (369 SE2d 38), and cases cited therein.

6. Appellant's enumerations of error numbers 1 through 4 concern the introduction in evidence of certain photographs allegedly depicting the money taken during the robbery and either found on the accused or under the seat in the police car on which appellant was seated after his apprehension. We find these enumerations to be without merit.

a. Appellant asserts an improper foundation was laid for the introduction of the photographs. As a general rule, " '[b]efore a photograph may be introduced in evidence, it must be authenticated by a showing that it is a fair and truthful representation of what it purports to depict. [Cit.] "The quantum of evidence required to sufficiently identify photographs as true and accurate representations of what they purport to depict is a matter to be left within the discretion of the trial court." ' " *Turner v. State*, 181 Ga. App. 531 (353 SE2d 13). Appellant has failed to show any abuse of discretion on the part of the trial judge in this regard.

Assuming without deciding that the money in question constituted evidence of a fungible nature generally requiring, as a condition to its admission in evidence, that the State "show a chain of custody which is adequate to preserve the identity of the evidence," *Kelly v. State*, 182 Ga. App. 7 (2) (354 SE2d 647), we find that such a chain has been established. When chain of custody is required, "the burden is on the prosecution 'to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution.' [Cit.] However, the State need not negate all possi-

bility of tampering, and 'need only establish reasonable assurance of the identity' of the confiscated evidence." *Kelly*, supra at 9; see *Tillery v. State*, 188 Ga. App. 320 (1) (372 SE2d 851); *Tyson v. State*, 184 Ga. App. 309 (2) (361 SE2d 386). The State met its burden, by introduction of direct and circumstantial evidence, of showing with reasonable certainty that the photographs were of the same money taken from the accused or found in the police car and that there had been no tampering or substitution. Therefore, the photographs were properly admitted.

b. Appellant asserts that the admission of the photographs violated the provisions of OCGA § 17-5-50, regarding the disposition of seized property. We find this enumeration of error to be without merit. Subsections (a), (b), (d), and (e) of OCGA § 17-5-50, on their face, show that these provisions do not establish any procedural prerequisites to the admission into evidence of any photographs of any stolen, embezzled, or otherwise unlawfully obtained property that is or was in the custody of the police. Thus, the failure of the police to comply with these provisions prior to the tender of the money taken from appellant to the owner of Video Junction did not preclude the admission of these photographs in evidence.

While subsection (c) of OCGA § 17-5-50 does, in part, pertain to the admission in evidence of photographs of such property when it has been duly identified in writing, it does not prohibit the introduction of such photographs under some other method of authentication. In fact, the legislative history of this code section and its predecessor reveals that, rather than being a rule of restriction, it was "to provide that photographs or other identification of said property shall be deemed competent evidence and admissible at trial. . . ." Ga. L. 1978, p. 2260. See Ga. L. 1979, p. 761. For reasons above discussed, we find that the photographs were duly authenticated and that a proper foundation was laid for their admission in evidence.

c. Appellant in part asserts that he was denied the right to *analyze* the actual money taken and was denied the right to confront the witnesses and to question them based on "analyzation of the actual money." The trial record reflects appellant made no specific objection to the admission of the photographs on the grounds that he was denied a right to analyze the money. Accordingly, this portion of his first enumeration of error is waived. *Allen v. Montgomery Ward & Co.*, 186 Ga. App. 337 (2) (367 SE2d 120), and cases cited therein. We find that the remaining portion of his first enumeration of error and his fourth enumeration of error are both without merit.

d. Assuming arguendo error had occurred as asserted in enumerations of error 1 through 4 by the admission in evidence of the photographs, we find beyond a reasonable doubt that such error, even if of constitutional magnitude, would be harmless. See *Palmer v. State*,

supra at 897. Moreover, we note that Patrolman Rachels testified without objection regarding the amount of money and coins found on appellant and in the patrol car.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 10, 1989.

*Randolph H. Phillips*, for appellant.

*Hobart M. Hind, District Attorney, John L. Tracy, Assistant District Attorney*, for appellee.