A92A0473. PHILLIPS v. THE STATE.
(420 SE2d 316)

BIRDSONG, Presiding Judge.

James K. Phillips appeals his judgment of conviction of rape, armed robbery and burglary, and the sentence.

Shortly before the rape incident, appellant was observed by a neighbor of the victim standing across the street looking in the direction of the victim's and the witness' windows.

The rape victim testified that she had never seen her assailant before the incident; she heard her bedroom door open and saw a man wearing a hat and holding a knife; there was little light in the bedroom; she could see the man had socks on his hands, which he later discarded; she screamed and the man jumped on her; he told her to be quiet or he would kill her; the assailant forced her to go downstairs to give him money and she could see his face well as it became illuminated by window light when he was standing facing the window; she gave the man all the money she had in her wallet and he also took certain jewelry; she could see the assailant clearly when he was sitting on the sofa counting the money; the assailant then raped her on the living room sofa; he thereafter pulled her into the bathroom, turned on the light, and told her to stay there; she could see part of his face in the bathroom light as he turned partly toward her; she made an in-court identification of appellant as the person who raped her; a photograph of appellant depicted how her assailant looked the night of the incident (the person had a short, small mustache in the photograph); State Exhibit 19 is the hat worn by the assailant that night; the incident lasted approximately 30-40 minutes; after the incident she went into shock and could not give the police an immediate description of her assailant; at the hospital she told an officer that the

person who raped her had no facial hair.

Later that night after returning to her apartment complex, the victim described her assailant to one officer as being a black male, approximately 25-30 years of age, at least six feet tall, slender build, curly-like hair, clean shaven as far as she could tell, dark complexion, and wearing a T-shirt and a jacket. Another officer testified that the victim described her assailant to him that night as being between five feet ten and six feet tall, medium build, black male, no glasses, and no facial hair.

The apartment of the rape victim was next door to a vacant apartment in which appellant was found five days later. Appellant was convicted of committing burglary in this vacant apartment. The owner of the premises previously had observed that the back sliding door of the apartment had been "jimmied" open and that the electric stove burners had been left on. Subsequently, he found a black male in the apartment; the stove burners were on; the man's pants and shirt were lying across open cabinet doors apparently drying over the stove. The intruder put his pants and shirt on and asked to retrieve his wallet and shoes. The owner who was carrying a gun told the intruder to accompany him to the office, but once outside the intruder started to back away and appeared to be getting ready to flee. The owner called for the intruder to stop and fired two warning shots into the ground, but appellant ran into a wooded area where he was found about 20 minutes later by the police. The police brought appellant back to the apartment complex and the owner identified him to the police as the intruder. Examination of the apartment showed the lock had been popped loose on the sliding glass door. Nothing was taken from the apartment and only the back sliding door was damaged. The owner made an in-court identification of appellant as the person who had intruded into the apartment without permission.

After the State rested, the defense rested without calling any witnesses in behalf of appellant. *Held*:

1. Appellant asserts that he was denied his right to counsel at the lineup because it was held after the date originally set for his preliminary hearing. However, it appears that at the time of the lineup appellant had not been indicted for rape, the offense at issue at the lineup, but had been indicted on the unrelated charge (Count IV) of burglary of a vacant apartment occurring several days after the rape. The rape indictment was not returned by the Grand Jury until December 1990. A preliminary hearing on the unrelated burglary charge had been scheduled for September 13, 1990, but the hearing was postponed so the rape allegations could be investigated and the lineup was conducted on September 17, 1990. Appellant subsequently was tried on four counts, including the rape count and the count of burglary of the vacant apartment.

No federal constitutional right to counsel exists at a pre-indictment lineup. *Evans v. State*, 201 Ga. App. 20, 26 (3) (410 SE2d 146). "The Sixth Amendment right [to counsel] is *offense-specific*. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (Emphasis supplied and punctuation omitted.) *McNeil v. Wisconsin*, 501 U. S. ___ (111 SC 2204, 115 LE2d 158, 166-167). "The purpose of the Sixth Amendment counsel guarantee — and hence the purpose of invoking it — is to 'protec(t) the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendant have solidified' with respect to a *particular* alleged crime." (Second emphasis supplied.) Id., 115 LE2d at 168. "The right does not apply with respect to one offense where adversary proceedings have been commenced with respect to a different offense, but not that offense." 22 CJS, Criminal Law, § 286, citing inter alia, *U. S. ex rel. Hall v. Lane*, 804 F2d 79, 80 (1) (7th Cir.), cert. den. *Hall v. Lane*, 480 U. S. 921 (107 SC 1382, 94 LE2d 696). Thus, " 'the viewing of the (defendant at the) lineup took place during (the) investigatory (stages) of the [rape offense] at a time when appellant was not required to have counsel present.' " *Williams v. State*, 178 Ga. App. 581, 586 (4) (344 SE2d 247). Nor would the mere showing of a photograph of appellant to the victim before the lineup constitute a "critical stage" requiring the presence of counsel. *Durham v. State*, 185 Ga. App. 163, 167 (4) (363 SE2d 607).

2. Appellant further asserts that the trial court erred in admitting the rape victim's pretrial and in-court identification of appellant, as the pretrial identification procedure was so tainted as to require exclusion of the in-court identification, because it was both impermissibly suggestive and resulted in a substantial likelihood of irreparable misidentification.

Specifically, appellant claims that the victim was aware prior to the lineup that there was an individual in jail who may or may not have been her assailant; that appellant was staring directly at the victim when she entered the viewing room (appellant could not see the victim at this time, although she could see him) and, that prior to the lineup she was shown a picture of appellant Phillips. There exists no testimony whether the police conducted a photo lineup or photo spread and whether the photo of appellant was or was not shown individually or during the course of a photo lineup or photo spread. The record merely reflects that sometime prior to the lineup, the victim was shown Phillips' picture, and that no notations or comments were made to the victim in reference to Phillips' presence and participation in the lineup. However, the record does establish that the photograph

taken of appellant at the time of his arrest was not shown to the victim. Otherwise, the type of picture shown and the circumstances and date of its showing are not established by the record, and we will not speculate as to these matters. The mere fact the victim was at some unknown time and under some unknown circumstances shown a picture of the person she subsequently identified in the lineup would not taint, as a matter of law, the pretrial identification procedure.

The victim was informed several days earlier a lineup would be conducted, that an individual was in jail who fit the description of her attacker, and this individual may or may not have raped her. She was not told the position in which that individual would appear in the lineup, but under some undisclosed circumstance was shown a picture of appellant prior to trial. Appellant was informed that a physical lineup would be held on September 13, and was advised that if he wanted an attorney present that he needed to notify one and make sure the attorney wanted to be there. Appellant never stated he wanted an attorney, but could not afford one.

The lineup was conducted in a special room equipped with a "one-way mirror" so that the lineup participants could not see the victim. Five people, including appellant, participated in the lineup. The other participants were chosen based on having similar physical features, such as height, weight, complexion, age, and mustache, as appellant had at the time of the lineup. Appellant was allowed to choose his number 3 position in the lineup. Routine police lineup procedures were used. Before the lineup, the victim was told the police could not help her in any way with her identification; that each person would hold a card with a number or have a number above them; and she had to look at any person she suspected as being the assailant carefully and state that it is or is not him. The victim focused her eyes on appellant as soon as she entered the viewing room, stared at him, and without hesitation made a positive identification. She was asked to look at all lineup participants, which she did, and thereafter affirmed her positive identification of appellant. The victim asked the police to have appellant speak, but the police required all lineup participants to speak the same words starting with the participant on the left. When appellant spoke, the victim was able to identify his voice. The victim was not told she should pick appellant; rather, she was told the police suspected someone or a lineup would not be held, but there was no guarantee, and if she did not see her assailant not to worry as the police would continue to look for him and she should not feel bad if he was not there. The police never confirmed or denied the accuracy of the victim's pretrial identification to her. Photographs were taken of the lineup. The investigating police officer testified he charged appellant with rape immediately after the lineup and a preliminary hearing was held on the charges on September 18, 1990.

"The test for determining whether a due process violation occurred in cases such as this 'is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *McCoy v. State*, 190 Ga. App. 258 (3) (378 SE2d 888). The considerations in evaluating the likelihood of misidentification include: (a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation. *Neil v. Biggers*, [409 U. S. 188 (93 SC 375, 34 LE2d 401)]." *Martin v. State*, 193 Ga. App. 581, 582 (1) (388 SE2d 420). Considering these factors, we conclude that under the totality of the circumstances, the procedures used in this case to identify appellant were not so impermissibly suggestive as to cause a very substantial likelihood of irreparable misidentification. Moreover, assuming arguendo some taint had occurred in the pretrial identification, a witness' in-court identification may be admitted if it has an "independent origin." See generally *McCoy*, supra; *Martin*, supra. Again, considering the totality of the circumstances, we find that the victim's in-court identification also had independent origin.

Appellant's enumeration of error regarding the denial of his motion to suppress pretrial and in-court identification is without merit.

3. Appellant asserts there was insufficient evidence to support the verdict and judgment of conviction of the three counts of which he was convicted. We disagree.

As to his conviction of burglary of the vacant apartment, appellant specifically argues that the State failed to prove the element of intent to commit a felony or theft therein in respect to the burglary charge. "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters . . . any building . . . designed for use as the dwelling of another or enters or remains within any other building . . . or any room or any part thereof." OCGA § 16-7-1 (a). The evidence uncontrovertedly establishes that appellant, without lawful permission, was taking and using electricity in the apartment to heat the stove burners to dry his clothing. OCGA § 16-8-5 pertinently provides that "[a] person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations . . . or the use of personal property which is available only for compensation." The usual definition of "accommodations" is: (a) lodging, (b) food and lodging, and (c) a seat, berth or other facilities for a passenger on a train, plane, etc. Webster's Encyclopedic Unabridged Dictionary of the English Language (1989 ed.). The surreptitious and unauthorized entrance and use of a vacant apartment is one

of the forms of obtaining "accommodations" clearly encompassed within the meaning of OCGA § 16-8-5. Further, a "service" is "the supplying or supplier of utilities or commodities, as water, electricity, gas, required or demanded by the public." Webster's, supra. We are also satisfied that the surreptitious and unauthorized use of electricity or electrical energy is one of the forms of obtaining "services" within the meaning of OCGA § 16-8-5. See *Kitchens v. State*, 159 Ga. App. 94, 96 (4) (282 SE2d 730) (appellant "unlawfully reconnected the meter serving his apartment and thereby obtained electrical service to which he was not entitled (i.e., theft of services))"; cf. *Reynolds v. State*, 101 Ga. App. 715 (1a) (115 SE2d 214) (theft of water). We need not decide whether electricity or electrical energy also is a form of personal property described in OCGA § 16-8-5. See generally 50 AmJur2d, Larceny, § 77; 52A CJS, Larceny, § 3 (1) b.

Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of all offenses (Counts I, III, and IV) of which he was found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

4. Appellant's assertion that the trial court erred in denying his motion for new trial is without merit. See Divisions 1-3 above.

5. Appellant's final enumeration of error is that he was denied effective assistance of counsel. Appellant claims his trial defense counsel was inadequate because he failed to call witnesses who could testify that appellant wore a mustache and was wearing it on the day the crime was committed, as the victim admitted she had told the police her assailant did not have any facial hair. Appellant contends such evidence could have induced reasonable doubt and resulted in the acquittal of the defendant.

Appellant's trial defense counsel filed a motion for new trial raising the general grounds; the issue of effective assistance of counsel was not therein raised. On October 4, 1991, the trial court overruled (denied) the motion for new trial. On October 21, 1991, appellate counsel filed a notice of appearance on behalf of appellant. Appellate defense counsel did not attempt to file either an amended or extraordinary motion for new trial, but did file a timely notice of appeal. Appellate defense counsel asserts that appellant was denied effective assistance of counsel as one of appellant's enumerations of error on appeal.

In view of the posture of this case, we cannot determine, as a matter of law, whether appellant was denied effective assistance of counsel. Compare *Lee v. State*, 199 Ga. App. 246, 247 (3) (404 SE2d 598). We find *Johnson v. State*, 259 Ga. 428 (2) (383 SE2d 115) to be controlling, and accordingly will remand this matter to the trial court for an evidentiary hearing on the issue of ineffectiveness of trial de-

704

fense counsel.

*Judgment affirmed as to Divisions 1, 2, 3, and 4. Case remanded for appropriate action as to Division 5. Andrews, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I fully concur in Divisions 1 through 4 and reluctantly concur in the remand of the case. Defendant had an opportunity to raise the issue of alleged ineffectiveness of trial counsel prior to the filing of the notice of appeal by extraordinary motion for new trial. OCGA § 5-5-41. See dissents in *Weems v. State*, 196 Ga. App. 429, 431 (395 SE2d 863) (1990), and *Kinney v. State*, 199 Ga. App. 354 (405 SE2d 98) (1991); special concurrence in *Shavers v. State*, 200 Ga. App. 76 (406 SE2d 803) (1991); *McGraw v. State*, 199 Ga. App. 389, 390 (2) (a) (405 SE2d 53) (1991).

DECIDED JUNE 4, 1992 —
RECONSIDERATION DENIED JUNE 11, 1992 — 

*Paul McGee*, for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney*, for appellee.