## A09A1712. JACKSON v. THE STATE.
(687 SE2d 666)

MILLER, Chief Judge.

A Bartow County jury found Jacqueline Denise Jackson guilty of interference with government property (OCGA § 16-7-24) and theft of services (OCGA § 16-8-5).[1] On appeal, Jackson contends that the evidence was insufficient to support her convictions.[2] Given that the evidence shows that Jackson was a party to the act of damaging the locks to the water meter for the residence in which she was staying, and because evidence shows that she engaged in the surreptitious and unauthorized use of water services, we disagree and affirm.

> When a defendant contends that there was insufficient evidence to convict [her], we review the evidence in the light most favorable to the verdict, and we neither assess witness credibility nor weigh the evidence. The defendant no longer enjoys the presumption of innocence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 93 (1) (625 SE2d 465) (2005).

So viewed, the evidence shows that Jackson applied for a lease on a Bartow County house, but she did not qualify on her own merits. On or about June 20, 2006, Jackson submitted an application in the name of Curtis Knowles. Donna Howren, the rental company's

---

[1] The jury also found Jackson guilty of theft by taking (OCGA § 16-8-2), which the trial court merged into her conviction for theft of services. The jury found Jackson not guilty of one count of interference with government property by damaging a "water meter and valve and pipe."

[2] As to the theft by taking count, "[w]e need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

principal, agreed to lease the property to Knowles with Jackson listed as an occupant. Knowles, however, did not come to the leasing office to sign the lease, nor did Howren receive the required $1,000 deposit.

In light of these problems, Howren decided to contact Jackson personally at the rental property, where she found Jackson unloading boxes from a U-Haul into the carport. Howren informed Jackson that because the lease had not been executed and she had not received "good money on the house" Jackson could not take possession. Jackson responded that she had nowhere else to go and proceeded to move into the residence.

On June 21, 2006, Jackson went to the Bartow County Water Department and requested water service for the rental property. The following day, the Department received notice from Howren that there was no executed lease on the property. According to a Department employee, "we called [Jackson], refunded her the money, and we didn't turn the water on."

On June 26, 2006, the Department sent a meter reader to the property, and he determined that someone had turned the water on. The reader then "locked the meter off," using a padlock. The reader received orders to return to the property on June 29, 2006, at which time he determined that the padlock had been cut and removed from the meter box, and that the water had been turned on again. The reader pulled the meter out of the box, which prevented the residence from receiving water, and he installed a second padlock. The reader returned to the residence again on July 3, 2006, and the second padlock was missing. Inasmuch as the reader had previously removed the meter, there was a gap between the county's water pipe and the residence's water pipe. Although the water was not flowing at the time, the reader determined that the water had previously been turned on, and he noticed PVC piping and tools on the ground.

According to a neighbor, Jackson and two men moved into the rental house in June 2006. The neighbor testified that she had seen "them" one evening lying on the ground "messing with the water" and that on another occasion she saw water "spurting out all over the place" while "they was messing with it." She clarified, however, that on both occasions it was one of the men who was living in the residence who was on the ground by the water meter while Jackson was out in the yard at the same time. According to the neighbor, the man was near the water main at the street while Jackson was at the "tree area." When asked if she saw Jackson do anything, the neighbor replied, "no."

After Jackson moved into the residence over Howren's objections, Howren commenced eviction proceedings and after complying with the procedures, including sending what she described as a

"three-day demand letter," she accompanied the sheriff's officers as they returned possession of the residence to the rental company. During the repossession, Howren found bolt cutters and the locks from the water meter lying in the window inside the house.

As applicable here, "[a] person commits the offense of interference with government property when he destroys, damages, or defaces government property." OCGA § 16-7-24 (a). The indictment charged Jackson with having "damage[d] a water meter lock, government property of Bartow County, by removing said item and obtaining water from said agency without authorization[.]" As to theft of services, "[a] person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations, entertainment, or the use of personal property which is available only for compensation." OCGA § 16-8-5. Jackson was charged with committing this offense by "knowingly obtain[ing] services with a value of less than $500 which is available only for compensation, to wit: water service[.]"

We disagree with Jackson that the evidence was insufficient to support her conviction for interference with government property. According to the eyewitness, Jackson was in the yard while one of the two men also living in the house was "messing with the meter." "Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction." (Punctuation and footnote omitted.) *Coney v. State*, 290 Ga. App. 364, 372 (3) (c) (659 SE2d 768) (2008). Although mere presence is insufficient to support a conviction, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). A person is concerned in the commission of a crime if she "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3), (4).

> While an individual's presence when a crime is committed will not be sufficient, in and of itself, to convict that individual as a party to the crime, if the individual is present and assists in the commission of the crime or shares in the criminal intent of the actual perpetrator of the crime, the individual may be convicted as a party to the crime.

(Citation omitted.) *Grace v. State*, 262 Ga. 746, 748 (4) (425 SE2d 865) (1993). "Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary and may be inferred from the defendant's conduct before, during, and after the crime."

(Citations omitted.) *Eckman v. State*, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001).

Here, the evidence shows that Jackson applied for water service for the residence and that she moved into the property over Howren's objection, after which she was notified by the Department that she would not be receiving water service. Thus, her actions before the crime showed her desire to obtain water service for the residence. The testimony of Howren and the meter reader establish that the Department's locks were damaged and removed by someone living in the rented house for the purpose of accessing the water meter. For example, Howren found the damaged locks inside the house, and Jackson was living in the house after the locks had been removed. Further, according to the eyewitness, "it was getting dusty dark to dark when they would go out"; "they was messing with [the meter]"; and "I saw them one evening down there laying [sic] on the ground messing with the water." Although the eyewitness's testimony also established that she did not see Jackson physically interacting with the meter, the jury was entitled to conclude that when the witness referred to "them" and "they" as having "mess[ed]" with the water meter she was conveying an accurate impression that Jackson and her roommate shared a common purpose.

> Since there was evidence that [Jackson] was present when the crimes were committed and the jury could infer from her conduct before[, during] and after the crime[ ] that she shared the criminal intent of the actual perpetrators, the evidence was sufficient to authorize her convictions as a party to those crimes.

(Citations omitted.) *Eckman*, supra, 274 Ga. at 65 (1).

Jackson also contends that the evidence was insufficient to support her conviction for theft of services. We disagree. The State was required to show that Jackson knowingly obtained water services by deception and with intent to avoid payment. See OCGA § 16-8-5. "The essential ingredient of the offense is the intention to avoid payment." *Roberson v. State*, 145 Ga. App. 687, 688 (1) (244 SE2d 629) (1978). "[T]he surreptitious and unauthorized use of electricity or electrical energy is one of the forms of obtaining 'services' within the meaning of OCGA § 16-8-5." (Citations omitted.) *Phillips v. State*, 204 Ga. App. 698, 703 (3) (420 SE2d 316) (1992) ("appellant, without lawful permission, was taking and using electricity in the apartment to heat the stove burners to dry his clothing") (id. at 702 (3)). For purposes of OCGA § 16-8-5, we see no reason to distinguish between the theft of water services and the theft of electrical services.

The evidence shows that Jackson had actual knowledge that water was being provided to the residence as a result of illicit tampering with the water meter and not because she had applied for water service from the Department. The evidence also demonstrates that the Department notified Jackson that it would not turn the water on, yet Jackson continued to stay in the residence, and this was consistent with Jackson's use of the stolen water without the intent to pay therefor. As the evidence was circumstantial as to the issue of Jackson's use and intent, the State was required to show "facts that are not only consistent with the hypothesis of the guilt of the accused, but the facts proved must exclude every other reasonable hypothesis." (Citation omitted.) *Williamson v. State*, 191 Ga. App. 388, 389 (381 SE2d 766) (1989). However, "the proved facts need exclude only *reasonable* hypotheses," not bare possibilities. (Citation and punctuation omitted; emphasis in original.) *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008). The jury was entitled to conclude that it was not a reasonable hypothesis that Jackson continued to stay in the home while refraining from employing the water for its common and necessary purposes, such as use of the bathroom facilities, or that she intended to pay for the water. Rather, any rational trier of fact could conclude that Jackson engaged in the "surreptitious and unauthorized use of [water services]." *Phillips*, supra, 204 Ga. App. at 703 (3). We find, therefore, that the evidence authorized any rational trier of fact to find Jackson guilty of theft of services beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 3, 2009.

*Jennifer B. Ventry, Timothy L. Kimble*, for appellant.
*T. Joseph Campbell, District Attorney, Gregory S. Dickson, Assistant District Attorney*, for appellee.