THOMAS, Judge.
Seth Weaver ("the father") and Jessi Jefferson ("the mother") are the parents of a child ("the child"). The parents were divorced by a judgment entered by the Etowah Circuit Court in December 2014. Although the divorce judgment does not appear in the record, certain orders of the *1016 circuit court, which do appear in the record, indicate that it had awarded the father "primary" physical custody of the child.[1] According to the mother, before she relocated from Georgia to Alabama in March 2015, she had exercised visitation with the child one weekend per month.
On April 19, 2016, the mother filed a modification petition seeking an award of custody of the child, and an ex parte motion seeking immediate custody, because, she asserted, the father had been arrested on outstanding warrants that had been issued in Georgia. That same day, the circuit court entered an ex parte order awarding the mother temporary custody of the child based on its determination that the father was currently incarcerated in the Etowah County Detention Center. On April 27, 2016, the father filed a motion requesting that the circuit court set aside the ex parte order. The record demonstrates that on June 9, 2016, the circuit court held a hearing at which it heard arguments of counsel, and, that same day, it entered an order setting aside the ex parte order. The June 9, 2016, order reads, in pertinent part:
"As [the father] is now on bond status regarding the charges in Georgia, the grounds upon which the emergency petition was granted are no longer present.
"Therefore, primary physical custody shall revert back to the [father], per the original decree, pending the Court hearing the petition of [the mother] for the modification of primary physical custody."
However, because the mother was entitled to exercise custody of the child pursuant to the summer-visitation schedule in the divorce judgment, the child remained with the mother and had been in the mother's custody for more than three months when the modification hearing occurred on July 26, 2016.
On August 8, 2016, the circuit court entered a judgment ("the modification judgment") determining that the mother had met the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984) ("the McLendon standard"), "by sufficiently addressing the issues of concern discussed in the original decree" and by achieving stability. It awarded, among other things, "primary physical care, custody, and control" of the child to the mother, joint legal custody of the child to the parents, and visitation to the father. The circuit court's findings include, as material changes of circumstances, that the father had encountered "a catastrophic medical condition of a new child" and "some pending out-of-state legal issues." The father filed a postjudgment motion, which circuit court granted in part; however, the amendment to the modification judgment is not pertinent to this appeal. The father filed a timely notice of appeal seeking this court's review of whether the circuit court "correctly appl[ied]" the McLendon standard.
"On appeal, this court presumes the correctness of a judgment based upon evidence presented ore tenus. Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
" ' "[W]e will not reverse [the judgment] unless the evidence so fails to support the determination that it is *1017 plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow." '
" Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993) ). However, this court reviews the interpretation and application of the McLendon standard, which involve pure questions of law, de novo. Gallant v. Gallant, 184 So.3d 387, 401 (Ala. Civ. App. 2014)."
K.U. v. J.C., 196 So.3d 265, 268-69 (Ala. Civ. App. 2015).
At the time of the modification hearing, the child was four years old. The mother testified that her circumstances had improved because she had achieved stability. She testified that she had married, had relocated to Alabama, had given birth to another child, and had obtained employment.[2] According to the mother, if the circuit court awarded custody of the child to her, the child would have her own bedroom in a two-bedroom house and would attend day care and a preschool program. The mother testified that the child loves the mother's husband ("the stepfather") and that the child enjoyed the support of the mother's family and the stepfather's family. The mother's father-in-law testified that he and his wife were "always available." The mother's mother-in-law testified that the child is "very attached" to the stepfather. The mother said that after the ex parte custody order had been entered the child had visited the father for only one week but that the mother had routinely allowed him to "FaceTime" with the child.[3]
The father agreed that the mother had achieved stability, and he requested that the circuit court award the mother increased visitation. However, he testified that there had been no material change in circumstances. He said that, if the circuit court did not modify the child's custody, she would continue to live in the same four-bedroom house with his wife ("the stepmother"), her son, the child's younger half sibling ("the child's half brother"), and the child's paternal grandparents; that the child would continue to attend the same preschool; that she would continue to have the same teacher;[4] that she would continue to enjoy the support of his family; and that he would continue to work for the same employer.
The father testified that the child's half brother was less than two years old and that he suffers from brain, kidney, and liver damage. The father said that the child's half brother's medical conditions had required hospitalizations but that the "extra attention" he required had been primarily provided by the stepmother who works from home.
The mother did not offer any testimony regarding the father's legal issues in *1018 Georgia. The following testimony was elicited from the father by his attorney:
"Q: Has there been a resolution yet to the criminal case in Georgia?
"A. Not yet, no.
"Q. Okay. Have you heard anything from your lawyer over there about the discovery or the process of trying to negotiate or anything like that?
"A. He said he's been talking with the district attorney over there to get it dropped."
However, "[w]e note that the trial court is allowed to take judicial knowledge of all previous proceedings and that it could consider the prior matters and is not required to forget the past." T.T. v. State Dep't of Human Res., 796 So.2d 365, 367-68 (Ala. Civ. App. 2000) (noting trial court's ability, in termination-of-parental-rights case, to take judicial notice of prior proceedings in that court involving the parent and the child)(citing Clark v. State, 523 So.2d 131 (Ala. Civ. App. 1988) ). At the hearing on the mother's ex parte motion, the mother's attorney had argued that the father had been indicted for theft of services in Georgia regarding a utility account.[5] The mother's attorney said:
"[The father] bonded out there and has a pending case. I don't think anybody disputes that. I think they agree with that.
"What's going to happen with that case, we do not know. Under Alabama law, Judge, I'm sure even if he were convicted of the offense, it would not be something that would require prison time.
"... So worst case scenario, he's going to be on probation with a felony conviction.
"....
"[Leaving the child in the care of the stepmother] happened on one occasion, and [the mother's] concern is, until we get to a final hearing, this could happen again. We don't know. And that [poses] a present danger to the child and the child's safety."
Based on the foregoing, we conclude that the circuit court could not have properly determined that there had been a material change in circumstances and that, furthermore, the circuit court was not presented with evidence demonstrating that the positive good brought about by a modification of the child's custody would more than offset the inherently disruptive effect caused by uprooting the child or that the change in custody would materially promote the best interests of the child. Ex parte McLendon, 455 So.2d at 865-66.
"The McLendon standard is designed 'to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption.' Ex parte Cleghorn, 993 So.2d [462] at 468 [ (Ala. 2008) ]. When implementing the McLendon standard, a trial court should allow a transfer of custody 'only after a sifting inquiry to assure that the stability and other interests of the child ... have been properly considered.' Gallant v. Gallant, 184 So.3d [387] at 399 [ (Ala. Civ. App. 2014) ]."
K.U., 196 So.3d at 272.
Although the mother demonstrated that she is a fit custodian, the mother presented no evidence demonstrating that the medical needs of the child's half brother or the father's ongoing legal issues in Georgia had affected the welfare *1019 of the child or that the positive good brought about by the change in the child's custody would more than offset the disruptive effect of uprooting the child.
"The law is well settled that '[a] parent seeking to modify a custody judgment awarding [sole] physical custody to the other parent must meet the standard for modification of custody set forth in Ex parte McLendon [, 455 So.2d 863 (Ala. 1984) ].' Adams v. Adams, 21 So.3d 1247, 1252 (Ala. Civ. App. 2009). Ex parte McLendon requires that
" 'the noncustodial parent seeking a change of custody must demonstrate (1) "that he or she is a fit custodian"; (2) "that material changes which affect the child's welfare have occurred"; and (3) "that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child." Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala. Civ. App. 1989) (citing, among other cases, Ex parte McLendon, 455 So.2d 863, 865-66 (Ala. 1984) (setting forth three factors a noncustodial parent must demonstrate in order to modify custody)).'
" McCormick v. Ethridge, 15 So.3d 524, 527 (Ala. Civ. App. 2008). It is not sufficient for a noncustodial parent seeking a modification of custody to show that he or she is a fit custodian. Id. The noncustodial parent must prove all three McLendon factors in order to warrant a modification of custody. Id."
Gordon v. Gordon, 231 So.3d 347, 353(Ala. Civ. App. 2017).
Therefore, the modification judgment is reversed, and the cause is remanded for the circuit court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

We interpret the divorce judgment as having awarded the father sole physical custody. See Ex parte Stouffer, 214 So.3d 1192, ---- (Ala. Civ. App. 2016) ; see also Smith v. Smith, 207 So.3d 72, 73 n.1 (Ala. Civ. App. 2016) ("The term 'primary' physical custody is an incorrect term and is not recognized in Alabama law."); and Whitehead v. Whitehead, 214 So.3d 367, ---- (Ala. Civ. App. 2016) (Thomas, J., dissenting).

As noted by the father in his appellate brief, the testimony regarding the mother's employment is confusing. Apparently, the mother had been released from her employment as a teacher in Tuscaloosa County, and she had acquired new employment as a substitute teacher in Shelby County.

"FaceTime" refers to a video-telephone service that makes it possible to conduct video-telephone conversations.

The child's preschool teacher testified that she had been the child's teacher for two years, that the child would again be enrolled in her class, that the child was well-adjusted, and that the child was well-liked by her classmates.

"As to theft of services, '[a] person commits the offense of theft of services when by deception and with the intent to avoid payment he knowingly obtains services, accommodations, entertainment, or the use of personal property which is available only for compensation.' [Ga. Code Ann.,] § 16-8-5."
Jackson v. State, 301 Ga.App. 406, 408, 687 S.E.2d 666, 669 (2009).