72389. KENNEDY et al. v. THE STATE.
(347 SE2d 604)

BIRDSONG, Presiding Judge.

Cecil Kennedy and Eduardo Fruto were convicted at a joint trial of robbery by force and each sentenced to serve nine years. They each bring this appeal enumerating eight alleged errors. *Held*:

The facts construed most beneficially in support of the jury's verdict would authorize the jury to find as follows. On May 9, 1984, Kennedy and Fruto apparently were hitchhiking from Florida back to their home in New York City. They were let out by their auto hosts at a point near Monroe Drive and Piedmont Avenue in Atlanta. After getting something to eat, they returned to the point where they were discharged but did not make an apparently preplanned rendezvous. Kennedy and Fruto then decided to rob an antique gift shop which was nearby. They sought entry into the shop but the sole occupant and owner of the antique shop had to admit entry into the store by releasing a catch on the front door. She informed the man standing at the door (identified as Kennedy) that she was at lunch and would reopen in about an hour. Kennedy and Fruto did not pursue their plan that day but spent the night in a nearby park.

The next day shortly after noon on May 10, 1984, the shop owner

admitted Kennedy and Fruto into the store. She was waiting on another male customer at that time. Kennedy and Fruto indicated that one wanted to purchase a silver tea service and the other a nice piece of jewelry inasmuch as Mother's Day was approaching. Fruto indicated interest in a silver service and Kennedy kept asking to see ever more expensive pieces of jewelry. At what appeared to be a pre-arranged signal (wherein Kennedy referred to a Buddha medal he was wearing), Kennedy suddenly went behind the victim, grabbed her around the neck, and put a small knife to her throat and told her a robbery was taking place. Fruto, according to the victim, also displayed a knife. When the victim began to scream, Kennedy pressed the door release and Fruto ran out the door, holding it until Kennedy also exited. One of the two men scooped up the pieces of jewelry that Kennedy had been examining as well as a gold pen.

The victim pressed a burglar alarm while the robbery was in progress. The victim gave a fairly specific description of the two robbers including their dress and physical appearance. This was broadcast by an officer even as the description was being given. Within a few minutes, another officer ascertained that two men had been seen running at a mall area near the scene of the robbery. Two officers apprehended the appellants lying in waist-high undergrowth. They were warned of their *Miranda* rights and, without interrogation, taken to police headquarters. The victim was then taken to police headquarters and shown a lineup of six men. According to her testimony she saw six men all dressed substantially alike and of the same general characteristics. She immediately picked out two of the men in the lineup based upon her ten to fifteen minutes' unobstructed observation of the two men who robbed her.

Each of the appellants gave a fictitious name and false age, indicating that they were juveniles. Thus, each was transferred to juvenile jurisdiction. A juvenile probation officer talked with the appellants later on the afternoon of May 10 and again each gave the false identification and age. Because there was a question whether the appellants were English-speaking, a Spanish-speaking attorney was furnished. However, the attorney did not appear to be necessary for the probation officer ascertained they (appellants) understood English. Appellants remained in juvenile court jurisdiction over the weekend of May 11-14. On May 14, word was transmitted to the probation officer that one of the appellants desired "to tell the truth." She went to ascertain from the appellant Kennedy his true age as she suspected the age and possibly the name were not correct. When she arrived, not only did Kennedy give his correct name (from Johnson to Kennedy) and age (from 16 to 20), he also volunteered that he and his companion had desired to rob the antique store only to obtain wherewithal to return to New York. Kennedy admitted being in the store but stated that

the clerk (victim) had asked him about a medallion he wore around his neck and when he showed it to her, he also was taking a silver watch from his pocket. She thought it was a knife and began to scream. He panicked, pressed the door release, and he and Fruto fled without taking anything. No items taken from the store were ever recovered nor were any knives ever found.

1. The first enumeration of error urges the general grounds of insufficiency of the evidence. This enumeration questions the weight and credibility of the evidence submitted by the State. The evidence of the victim, if believed, fully supports a finding that Kennedy, by use of force, i.e., at knifepoint, compelled the victim to surrender several valuable items of personalty. Her testimony standing alone was sufficient to establish a robbery by force. *Redd v. State*, 154 Ga. App. 373 (1) (268 SE2d 423). Our responsibility after verdict is to indulge every presumption in favor of the prevailing party which in this case is the State. *Hendrix v. State*, 153 Ga. App. 791, 793 (2) (266 SE2d 568). We thus find that viewing the evidence in the light most favorable to sustaining the verdict, a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. In their second enumeration of error, appellants raise numerous issues and discrepancies involving the pretrial lineup, contending these factors point to a highly suggestive lineup resulting in the commission of prejudicial error. Though the evidence supports appellants' contentions that the ages, weights and heights of the persons in the lineup were different and that dress and complexions could also have helped to isolate the two appellants, in point of fact the testimony of the victim established that the dress of the persons in the lineup was so similar that she complained because the dress of the robbers was not followed more closely. It is beyond contest that she based her lineup (and in-court) identification of the two appellants upon their facial characteristics and the traumatic exposure to each of them she had experienced a matter of twenty minutes before. We have no hesitancy in concluding that viewing the totality of the circumstances involved in this pre-indictment lineup there was no improper suggestion of identity nor other improper procedures followed by the police to taint the results of the lineup. *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401); *Yancey v. State*, 232 Ga. 167 (205 SE2d 282).

3. In enumerations of error 2, 7, and 8, appellants complain that the trial court erred in refusing a continuance to the defense during the trial for the purpose of obtaining witnesses and evidence relating to the character and economic background of the victim of the robbery in this case. It was contended by the defense and admitted by the State that the victim was living in Atlanta under the auspices of the Federal Witness Protection Plan and using an assumed name in

her business. The defense obtained the witness' actual name and determined she had lived in another state. The defense also was aware that the witness had been arrested one or more times in that other state but the defense had no evidence of prior convictions. Furthermore, the defense developed leads from local police files that the victim had allegedly been victimized on earlier occasions and filed claims for property losses with insurance companies but that no convictions had resulted as a result of her complaints.

Prior to trial, the defense had requested *Brady* discovery on similar information concerning the victim. The State had responded by filing a motion in limine seeking to curtail any inquiry into the status of the victim under the Federal Witness Protection Plan. The State registered no objection to evidence of properly certified evidence of prior convictions pertaining to the victim for use as impeachment. During the cross-examination of the victim by the defense, appellants moved for a continuance to obtain further information concerning the victim. This was to be in the form of records and the presence of witnesses competent to testify to the content and authenticity of the records. However, it was admitted by the defense that there was no evidence as of the time of the motion for continuance that prior convictions existed or that any witnesses had been subpoenaed or were even immediately available.

Also when hearing the State's motion in limine, the appellants did not seek to show that exposure of the victim's identity (thus destroying the effectiveness of the witness' protection), would have aided the defense except to argue that to deny such exposure would curtail the right of effective cross-examination. Likewise as to the inquiry into previous complaints of property loss resulting from criminal acts followed by insurance claims, the appellants made no showing that criminal acts had not occurred or that claims were not justified. The only argument advanced was that criminal convictions had not followed the complaints. Thus, the appellants speculate that the complaints and claims were spurious.

Lastly, appellants complain that they were denied an extraordinary motion for new trial based upon newly discovered evidence that the victim had been convicted of crime both in another state and in Atlanta and this information had been known to the State but not disclosed in response to the *Brady* motion. The State's knowledge is predicated upon the assertion that in the day of the computer the State is presumed to know all that may be in a computer. Conspicuously missing is any evidence that the prosecutor's file contained the information sought or refutation of the prosecutor's averment to the trial court that the prosecutor had no such information in his file.

When we study these contentions in the overall context of the information available to the trial court, we cannot fault the trial court

for concluding no overriding showing as to fairness or due process had been established to disregard the witness protection given to the victim in a federal matter. Nor in the absence of evidence of a prior conviction or a showing that the victim had fraudulently reported crimes and falsely claimed insurance losses, do we find that the trial court improperly sustained the State's motion in limine as to these matters. For the same reasons, we conclude the trial court did not err in denying a motion for a continuance, for not only was the evidence sought of questionable value for the jury, the defense did not make an appropriate showing that admissible evidence was available or that a witness to testify thereto was reasonably available. There could be no abuse of discretion under such circumstances in the denial of the motion for a continuance. *Burney v. State*, 244 Ga. 33, 39 (7) (257 SE2d 543); *Bullard v. State*, 157 Ga. App. 606, 607 (2) (278 SE2d 26). Furthermore in regard to the denial of the extraordinary motion for new trial, our examination of the transcript of that hearing reinforces the conclusion there was no evidence available of previous convictions of the victim. Moreover, there is no showing that such prior convictions of the victim could or would have made a difference in the outcome, in the face of pretrial admissions by the appellants that they intended to rob the victim and that, admittedly that they were in her store; and considering the facts that she with sureness described her robbers and that they fled and sought to evade discovery. See *Bell v. State*, 227 Ga. 800, 805 (183 SE2d 357); *Dansby v. State*, 140 Ga. App. 104, 106 (230 SE2d 64). That transcript also belies any argument that the victim no longer had possession of some of the jewelry allegedly stolen or that the police files reflected more than consumer complaints. We find no merit in any of these enumerations of error.

4. Appellants urge in enumeration of error 4 the trial court erred in denying a motion for new trial based upon jury misconduct. The basis for this enumeration is that on the second day of trial the victim reported to the courthouse as a witness and apparently sat down outside the courtroom awaiting the start of the day's proceedings; while she was seated there, a juror also arrived at the courthouse, sat down next to the victim and made a casual remark concerning the weather. The victim made a noncommittal response concerning the weather. At that moment, the juror recognized the victim as a witness and left the side of the witness and engaged in no further conversation.

Appellants would have us condemn the obviously harmless and casual remark between the two innocent participants of the trial simply because they were in fact trial participants. The supporting argument is that by the few words exchanged the juror could have formed an opinion that the victim-witness was a "nice" person and thus give added credence to her testimony. This ignores the fact that the juror

heard extensive examination and cross-examination of the same witness in the courtroom setting.

In order to warrant the grant of a mistrial, there is a burden of showing not only error but prejudice. *Martin v. State*, 242 Ga. 699, 701 (251 SE2d 240). While a silent record might require us to presume error, these facts developed before the trial court effectively and conclusively dispel such a presumption. *Hardy v. State*, 242 Ga. 702, 704 (3) (251 SE2d 289).

5. In enumeration of error 5, appellants argue the court erred in refusing, in the face of a request therefor, a charge on the lesser included offense of theft by taking. We find no merit to this enumeration. The appellants were indicted and tried for the crime of armed robbery by use of a knife. They were convicted and sentenced for robbery by force. They admitted being present at the store but at trial advanced the argument that they made no effort to take anything of value and what the victim took to be a knife was nothing more than a silver object. They allegedly fled only because they panicked when the victim screamed and not because they had done anything wrong. In substance therefore, appellants were contending for an all or nothing verdict. They either were guilty of robbery or of nothing. They denied guilt of any crime. It hardly behooves them therefore to contend on appeal (or even at trial) that they were present with a less culpable state of mind. *Tuggle v. State*, 149 Ga. App. 844, 845 (6) (256 SE2d 104); *White v. State*, 147 Ga. App. 260, 261 (2) (248 SE2d 540).

6. In enumeration of error 6, appellants complain the trial court erred in admitting a pair of plastic handcuffs found in a briefcase left at the scene of the robbery by one of the appellants. Considering that this briefcase was abandoned by one of two robbers and that a pair of handcuffs is not necessarily remote in robbery as a means of restraint of the victim, we will not conclude that the evidence, which was a part of the res gestae of the crime and connected to the appellants, was erroneously admitted even if such evidence might have incidentally placed in question the law-abiding character of the appellants. See *Wilson v. State*, 246 Ga. 445 (271 SE2d 843). This enumeration lacks merit.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JUNE 12, 1986 —
REHEARING DENIED JULY 2, 1986.

*Susan L. Frank, Marc H. Wittes*, for appellants.
*Lewis R. Slaton*, District Attorney, *Joseph J. Drolet, Benjamin H. Oehlert III*, Assistant District Attorneys, for appellee.