A94A2245. GIDO v. THE STATE.
(454 SE2d 201)

RUFFIN, Judge.

Rene Gido appeals his conviction of the offenses of rape, statutory rape, kidnapping with bodily injury and robbery by force.

The evidence at trial, viewed in the light most favorable to the verdict, shows the following. At approximately 2:45 one morning, the 13-year-old victim was waiting for a friend outside a nightclub. A man, later identified as Gido, approached the victim and asked her name. When the victim told Gido she did not talk to strangers, he grabbed her tightly around the waist and dragged her up the street. As they approached an intersection, the victim got away and ran

across the street. Gido caught the victim and pushed her down an embankment. At the bottom of the embankment, he threw the victim between two bushes. Gido then picked up the victim, and as he moved her beyond a beam of light, she broke free and ran up the embankment. As she ran, money fell from her pantyhose, which Gido picked up, put in his pocket and said, "I guess this is for me." Gido again caught the victim, pushed her into the bushes, pulled her shirt open and broke her brassiere strap and the elastic band at the top of her shorts. With one hand on the victim's throat, Gido ripped off her shorts and pantyhose. At the same time, the victim was biting Gido, pulling his hair, screaming for help and trying to get away. Still holding the victim's throat, Gido pulled down his pants, and began having intercourse. As the victim continued crying for help, Gido punched her twice in the stomach and told her to shut up or he would kill her.

At that time, a security guard patrolling the parking lot of a nearby adult entertainment club heard the victim scream "rape." The club's valet called the police and the guard ran in the direction of the screams. As he approached the area of the screams he turned on his flashlight, and from approximately ten feet away saw Gido, with his pants around his knees, on top of the victim, moving in "up and down intercourse type motions." When the guard yelled "freeze," Gido jumped up and ran up the embankment. At the same time a police officer arrived, who, after a short chase, caught Gido, took him back to the scene, and after the victim identified him, placed Gido under arrest.

Gido contends there was insufficient evidence to support the convictions.

1. "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). In the instant case, although Gido denied penetrating the victim, her testimony demonstrated evidence of penetration. When asked if Gido penetrated and had sex with her, the victim responded affirmatively. Although Gido argues this testimony was insufficient evidence of vaginal penetration, the victim's statements were corroborated by scientific evidence that she had an "incompletely perforated hymenal ring" and the testimony of the security guard that he saw Gido on top of the victim, with his pants around his knees moving in "up and down intercourse type motions." The foregoing constitutes sufficient evidence from which the jury could conclude there was vaginal penetration. Furthermore, considering the victim's age at the time of the offense, as well as the corroborating evidence of the rape, we conclude that under OCGA § 16-6-3 (a) there was sufficient evidence for the jury to find Gido guilty of statutory rape.

2. Gido also argues that the conviction for kidnapping with bodily injury cannot stand because the "bodily injury" that was specified was "rape." " 'The rape of a victim of a kidnapping is sufficient evidence of bodily injury to authorize the conviction of [Gido] for kidnapping with bodily injury to the victim.' [Cit.]" *Edwards v. State*, 197 Ga. App. 51, 52 (397 SE2d 559) (1990). This enumeration is without merit.

3. Finally, Gido contends there was insufficient evidence to support his conviction of robbery by force. Gido argues that since the victim dropped the money and he picked it up without the use of force, the most he could have been convicted of is theft by taking. He further argues there was insufficient evidence to show his intent to rob or that any of the $389 he possessed at the time of his arrest included the money taken from the victim. We disagree.

The evidence showed that Gido used force to push the victim down the embankment and throw her into the bushes. " 'Without the force used by appellant here, the taking from [the victim] could not have been accomplished.' [Cit.]" *Maddox v. State*, 174 Ga. App. 728, 730 (1) (330 SE2d 911) (1985). Furthermore, although Gido did not take the money directly from the victim, it was in her immediate possession at the time of the robbery. See OCGA § 16-8-40 (a) (1). Nor does it matter that Gido did not have the intent to take the money at the time he pushed the victim down the embankment. "[H]e took [money] belonging to [the victim] regardless of when the intent to take the victim's [money] arose." (Punctuation omitted.) *Davis v. State*, 255 Ga. 588, 593 (2) (b) (340 SE2d 862) (1986). Finally, the victim testified that she saw Gido pick up the money and put it in his pocket. "Her testimony standing alone was sufficient to establish a robbery by force. [Cit.] Our responsibility after verdict is to indulge every presumption in favor of the prevailing party which in this case is the State. [Cit.]" *Kennedy v. State*, 179 Ga. App. 587, 589 (1) (347 SE2d 604) (1986).

Accordingly, we conclude the evidence was sufficient for a rational trier of fact to find Gido guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Battles v. State*, 205 Ga. App. 510 (422 SE2d 672) (1992).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 16, 1995.

*Melissa M. Nelson*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Jeffrey*

*H. Brickman, Assistant District Attorneys,* for appellee.