## A96A2120. GADSON v. THE STATE.
(477 SE2d 598)

BLACKBURN, Judge.

Henry Gadson appeals his conviction, asserting the evidence was insufficient and complaining of the trial court's admission of certain evidence and its denial of his motion to sever. Gadson went to trial on an indictment that charged him with attacking four Savannah women between December 6, 1994 and January 11, 1995. For his December 6 attack on the first victim, he was convicted of rape and

kidnapping with bodily injury. With regard to the December 10 attack on the second victim, he was convicted of aggravated assault with intent to rape and robbery by intimidation. His December 30 attack on the third victim resulted in convictions for rape, aggravated assault, kidnapping with bodily injury, and robbery by intimidation. Although the jury convicted him of armed robbery for his January 11 attack on the fourth victim, it acquitted him of rape, kidnapping with bodily injury, and aggravated assault charges related to that incident. He received consecutive life sentences. We find no reversible error.

1. Because Gadson challenges the sufficiency of the evidence, we apply the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979) and review that evidence with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. *Patterson v. State*, 181 Ga. App. 68, 69 (351 SE2d 503) (1986). We find the evidence supports each conviction.

The victim of the December 6 attack, a high school student, was walking toward the bus stop early in the morning when Gadson approached her and asked if she wanted to buy some clothes. When she ignored his solicitations, he grabbed her around the neck, told her he had a pistol, and forced her to walk with him to an abandoned garage, where he raped her and took money from her book bag. DNA samples taken from seminal fluid found in the victim's groin matched Gadson's blood. The victim identified Gadson in court. This evidence supports the convictions for rape and kidnapping with bodily injury related to this attack. See *Gido v. State*, 216 Ga. App. 330, 331-332 (1), (2) (454 SE2d 201) (1995).

The second victim testified that on the afternoon of December 10, she was walking through her neighborhood when Gadson approached her and said "he had just got out of jail" and was "looking for him a nice woman." When she tried to ignore him, Gadson told her he had a gun and, using abusive language, said that if she did not come with him to have sex, he would shoot her. He demanded the victim's money, but, as she thrust it at him, she ran away. She identified Gadson in court as her attacker. This evidence supports the corresponding convictions for aggravated assault with intent to rape and robbery by intimidation. See *Smith v. State*, 215 Ga. App. 673, 675 (2) (452 SE2d 526) (1994) (weapon requirement established by defendant's statement that he had a gun, by his threats, and by victim's fear of being killed); *Henderson v. State*, 204 Ga. App. 884 (1) (420 SE2d 813) (1992) (finding evidence sufficient to sustain conviction for aggravated assault with intent to rape).

The third victim testified that she awoke on the night of December 30 to a knock on her door. When she opened it, a man grabbed

her, hit her in the head, and dragged her to her backyard, where he forced intercourse on her. He threatened to kill her and took some of the jewelry she was wearing. In court, she identified Gadson as the attacker. This evidence is sufficient to sustain the resulting convictions for kidnapping, rape, and robbery by intimidation. See *Gido*, supra; *Smith*, supra.

In the final attack on January 11, 1995, the victim stated she was walking to a friend's house early in the morning when Gadson offered to sell her a ring. He followed her, telling her he wanted to "spend time with her," then put a gun to her face. "He didn't care about shooting me because he just had recently gotten out of jail," the victim testified Gadson told her. He then took her to an abandoned house, where he raped her and stole her necklace and a bracelet. She identified Gadson in court. This evidence supports the jury's verdict finding Gadson guilty of armed robbery. See id.

2. Gadson claims the trial court should not have let a police officer testify that, when he interviewed Gadson, the defendant told him he had just gotten out of jail and had been in jail for theft by taking. Under the circumstances of this case, we need not decide whether Gadson properly preserved his objection or whether the trial court erred in allowing the testimony.

Before the police officer testified, two of the victims testified that Gadson told them he had just been released from jail. Gadson made no objection to this testimony the first time the jury heard it. When another victim repeated the statement as she explained how Gadson verbally threatened her, the trial court correctly found it to be part of the res gestae. See *Johnson v. State*, 264 Ga. 456, 458 (3) (448 SE2d 177) (1994). Thus, by the time the officer testified, his repetition of the same information constituted cumulative evidence, so any error in admitting the statement was harmless as a matter of law. *Maher v. State*, 216 Ga. App. 666 (1) (455 SE2d 377) (1995); *Kittles v. State*, 168 Ga. App. 123 (1) (308 SE2d 241) (1983). But see *Felder v. State*, 266 Ga. 574, 575 (2) (468 SE2d 769) (1996) (error to admit defendant's statement, made during police questioning, that he was "on parole"). Furthermore, considering the overwhelming direct evidence of Gadson's guilt, it is highly probable that this testimony did not contribute to the verdict. Id.

3. The trial court did not err by refusing to sever the charges related to these several attacks. Two or more crimes may be joined in one indictment, and need not be severed, where they are based on "a series of acts connected together or constituting parts of a single scheme or plan." (Punctuation omitted.) *Dingler v. State*, 233 Ga. 462, 463 (211 SE2d 752) (1975). We review the trial court's determination for abuse of discretion. *Whitfield v. State*, 217 Ga. App. 402, 403 (1) (457 SE2d 682) (1995). In this case, the court was authorized to con-

clude that these assaults on women, all committed in a similar way within a five-week period by a person matching Gadson's description, constituted part of a scheme or plan. See id.; *Johnson v. State*, 213 Ga. App. 194 (1) (444 SE2d 334) (1994). Because the attacks bore such striking similarities, evidence of each could have been introduced at the trial of the others. Thus, the trial court's failure to sever could not have resulted in any prejudice to Gadson. Id. at 194-195.

4. Gadson also claims the trial court erred when it admitted DNA evidence that the State obtained by drawing his blood. The trial court found that after Gadson was arrested for assaulting one of the victims, the officers read him his *Miranda* rights and asked for a sample of his blood. He consented and signed a form which stated in part: "I, Henry Gadson, . . . having been advised by [the named police officers] understand that I am not required under law to consent to give my blood without a search warrant. Anything found by them can and may be used as evidence in any court of law." The court ruled that Gadson freely and voluntarily agreed to give his blood and placed no limits on the scope of his consent. Construing the evidence on the suppression motion in favor of the trial court's ruling, we find the trial court did not err in denying the motions. See *Larochelle v. State*, 219 Ga. App. 792, 797 (5) (466 SE2d 672) (1996).

Gadson claims the officers should have explained to him that his blood could be used against him in prosecutions involving other victims. We disagree. His citation to *Beasley v. State*, 204 Ga. App. 214 (1) (419 SE2d 92) (1992) is not persuasive. In *Beasley*, we found that because the defendant had given authorities only limited consent to use his urine sample, they could not use that urine as evidence against him in a later prosecution for possession of drugs found in the urine. The evidence reflected that authorities told the jailed defendant he had to give a urine sample before the judge would set bond, and they led him to believe the urine would be used for that purpose only. Contrary to Gadson's argument, *Beasley* does not require an officer to explain all charges which could result from a search for the search to be the product of "free and voluntary" consent. Cases involving consensual statements to police are instructive on this point. See, e.g., *Williams v. State*, 214 Ga. App. 423, 424 (447 SE2d 716) (1994) (no duty to advise a suspect of the consequences of his consensual statement); *Gaines v. State*, 179 Ga. App. 623 (1) (347 SE2d 673) (1986) (rejecting defendant's contention that his statement was not voluntary because officers did not tell him all the charges that could be made against him).

Accordingly, the trial court did not err by admitting the DNA evidence.

5. Finally, Gadson contends the trial court erred by "admitting" a crack pipe found at the scene of one of the attacks. The record shows,

however, that no pipe was ever displayed to the jury or tendered into evidence. The mention of the crack pipe came in a list of items an officer stated were found at the abandoned garage in which the first rape occurred. No witness suggested the pipe belonged to Gadson, and photographs of the garage admitted into evidence show it was strewn with refuse. Even if this testimony somehow maligned Gadson's character, we hold it to be incidental and harmless. See *Reed v. State*, 204 Ga. App. 272 (1) (419 SE2d 45) (1992).

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 8, 1996 —
RECONSIDERATION DENIED OCTOBER 28, 1996 —

*C. Jackson Burch*, for appellant.

*Spencer Lawton, Jr., District Attorney, Lori E. Loncon, Assistant District Attorney*, for appellee.