## A98A1230. GRABOWSKI v. THE STATE.
(507 SE2d 472)

ANDREWS, Chief Judge.

Roderick John Grabowski was found guilty by a jury of burglary, driving without a valid driver's license, and giving a false name to a law enforcement officer. On appeal from the judgment of conviction entered on the guilty verdicts, Grabowski claims that the evidence was insufficient to support the burglary conviction, and the trial court erred by refusing to suppress certain evidence. Finding sufficient evidence to support the convictions on all three offenses and finding no error in the trial court's refusal to suppress evidence, we affirm.

1. Grabowski contends the evidence was insufficient to show that he was guilty of burglary. The State presented testimony from the victim of the burglary and various police officers in support of its case.

The victim testified that about 9:00 a.m., while she was alone inside her house, she heard loud pounding on the front door and saw a white male wearing a plaid shirt, jeans, and an "Indiana Jones" style hat walk past a window. She could not see the man's face because the hat was pulled down low. The victim called 911 and reported the incident and also gave a description of the man to a police officer who was dispatched to her house a few minutes after the 911 call.

About 10:30 a.m. of the same morning, the victim noticed that a white van had pulled into the driveway of her house. As she was looking at the van from a window, she heard a loud bashing noise in the basement of the house. She again called 911 and reported that someone had apparently forced open the basement door, and she could hear the footsteps of someone coming up the basement steps toward the inside door to the house. At that point, the victim put down the phone and threw a heavy doorstop down the hall of the house and yelled, "Get out of my house." She heard the footsteps of someone running back down the basement steps. She ran to the front window of the house in time to see the white van leaving the driveway at a high rate of speed. As the van pulled away, she saw clothing stacked

up against the rear window of the van and a Tennessee license plate on the van. The victim picked up the phone and reported to the 911 operator, who was still on the line, that the person had left the basement and was driving away in a white van with a Tennessee license plate. She also watched the van as it drove away and told the 911 operator that she saw the van heading toward Arnold Mill Road.

The State presented evidence that the 911 operator immediately conveyed this information to the police by radio. Police dispatched an officer to the victim's residence and placed officers in the vicinity of the victim's house on alert for a white van with a Tennessee license plate in the area of Arnold Mill Road. Shortly after receiving the radio alert, two officers responding to the alert spotted a white van with a Tennessee license plate on Arnold Mill Road and stopped the van to investigate the burglary report. The officers explained to Grabowski that they had stopped him to investigate a recent burglary in the area where a similar white van had been spotted. Grabowski, who was the driver and sole occupant of the van, had no driver's license or other identification and gave a false name to the officers.

After being contacted by the officers at the investigatory stop, the officer dispatched to the victim's house drove the victim past the van, and the victim identified Grabowski's van as the white van she had seen leaving her driveway after the break-in. The victim noticed not only that Grabowski's van was the same type of white van with a Tennessee license plate, but that the rear window of the van was obstructed with clothing in the same way as the van she had seen in her driveway. After the victim identified Grabowski's van, an officer at the investigatory stop placed Grabowski under arrest for failure to have a driver's license.

At the victim's house, officers found that the basement door had been smashed open from the outside. A footprint was found on the outside of the basement door, footprints were found on the floor inside the basement, and tire tracks were found in the victim's driveway. After Grabowski was arrested, officers seized the shoes he was wearing and determined by comparison that the pattern of the tread on Grabowski's shoes matched the pattern of the tread of the footprint on the basement door and matched the tread pattern of the footprints inside the basement. Officers also matched the tire tread pattern on Grabowski's van to the tire tracks left by the van that the victim saw leaving her driveway after the break-in. Although the victim did not see the person who broke into the basement of her house at 10:30 a.m., Grabowski fit the general description and was wearing the same type of clothing as the person seen by the victim outside her house at 9:00 a.m. the same morning. The victim identified a hat found in Grabowski's van as similar to the "Indiana Jones" style hat worn by the unidentified person she saw outside her house at 9:00

a.m. on the morning of the break-in. In addition to the license and false name offenses, Grabowski was charged with the burglary of the victim's house.

Grabowski presented alibi testimony from his brother and testified in his own defense that he had nothing to do with the burglary of the victim's house. Grabowski admitted that his driver's license was suspended at the time he was stopped by the officers, and that he gave a false name to the investigating officers.

The direct and circumstantial evidence was sufficient to place Grabowski at the scene of the break-in and to allow the jury to conclude beyond a reasonable doubt that Grabowski was guilty as charged of burglarizing the victim's house. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-7-1. The evidence was also sufficient to support Grabowski's conviction on the driver's license and false name offenses.

2. Grabowski invoked the discovery provisions of OCGA § 17-16-1 et seq. prior to trial. He claims that the State violated its duty pursuant to OCGA § 17-16-7 to produce certain statements allegedly in its possession, custody, or control made by his brother to a police officer.

The statements at issue were statements made by Grabowski's brother to the officer which were not recorded or reduced to writing and which the prosecutor did not become aware of until the trial was in progress. "Th[e] statutory obligation [of § 17-16-7] is not triggered when a witness merely makes an oral statement. There can be no 'possession, custody, or control' [by the State] of a witness' statement which has neither been recorded nor committed to writing. OCGA § 17-16-1 (1)." *Forehand v. State*, 267 Ga. 254, 255-256 (3) (477 SE2d 560) (1996); OCGA § 17-16-1 (2) (C). The trial court did not err by concluding that admission of the statement did not violate the discovery provisions of OCGA § 17-16-1 et seq.

3. Grabowski claims the trial court erred by not suppressing the victim's identification of the van at the investigatory stop.

Citing *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972) and *Simmons v. United States*, 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247) (1968), Grabowski argues that showing the victim the van at the investigatory stop was akin to a "showup" identification of a suspect which was unnecessarily suggestive and resulted in a substantial likelihood of misidentification. We find no basis for applying the identification procedures applicable to suspects in *Neil v. Biggers* and *Simmons v. United States* to the victim's identification of Grabowski's van. The trial court did not err by refusing to suppress the identification testimony as unreliable.

4. Grabowski contends the trial court erred by refusing to suppress evidence seized from him after his arrest because the initial

stop and detention were illegal and his arrest was without probable cause.

There is no merit to these contentions. The officers who stopped and detained Grabowski did so based on information provided to police by the burglary victim that a burglar who just minutes before had broken into her house in the immediate area was driving a white van with a Tennessee license plate on Arnold Mill Road. Immediately after receiving the report, the officers saw a white van with a Tennessee license plate on Arnold Mill Road. An officer who does not have probable cause to make an arrest, but who has a reasonable, articulable suspicion that the law is being violated, may conduct a brief investigative stop of a vehicle to maintain the status quo momentarily while obtaining more information. *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968); *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979). The facts justifying the stop must show that it was made on more than a mere hunch and was not arbitrary or harassing. *Sams v. State*, 265 Ga. 534, 535 (457 SE2d 812) (1995). The officers in this case acted on specific facts sufficient to create a reasonable suspicion that the driver of the van had been involved in the reported burglary. It was reasonable to stop the van and detain Grabowski long enough for the victim to arrive and determine if she could identify it as the van she saw speeding away from her house after the burglary.

Grabowski's arrest at the scene of the stop was for the offense of driving without a driver's license. This was a valid arrest based on clear probable cause.

Since the initial stop was justified and the subsequent arrest was supported by probable cause, the trial court did not err by refusing to suppress evidence seized pursuant to the arrest.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 24, 1998 —
RECONSIDERATION DENIED SEPTEMBER 3, 1998.

*Gregory A. Hicks, James K. Luttrell*, for appellant.

*Garry T. Moss, District Attorney, Rachelle L. Strausner, Scott T. Poole, Assistant District Attorneys*, for appellee.