A01A0713. McLESTER v. THE STATE.

(547 SE2d 709)

ELDRIDGE, Judge.

Jabari McLester was found guilty by a jury of one count of aggravated assault and one count of armed robbery against Dung Nguyen. The jury also found McLester guilty of one count of aggravated assault and one count of armed robbery against Hector Torres.[1] McLester appeals from the conviction and sentence entered thereon. We affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990). So viewed, the evidence shows that on October 21, 1999, at approximately 10:30 p.m., Nguyen pulled into the parking lot of the Forest Club Estates apartment complex in Clayton County in order to turn around. Nguyen pulled into a parking place. As he attempted to back out, McLester and another man approached his vehicle, preventing him from exiting the parking place. Nguyen was ordered to exit his car and hand over his wallet. The two men attempted to pull Nguyen's wallet out of his pocket. However, the wallet was wedged tightly inside the pocket and would not come out. The man with McLester grabbed Nguyen by the shoulder, pushed him against the car, and hit him on the head. McLester pulled out a gun and placed it against Nguyen's back. After the second attempt by the two assailants to remove Nguyen's wallet from his pocket failed, Nguyen was ordered to remove his wallet and give it to the two men, which he did. As the two men walked away with Nguyen's wallet, Nguyen asked them to take the money and throw him his wallet. McLester turned around and pointed the gun at Nguyen and told him to "shut up." Nguyen went to a nearby gas station and called the police. Both at trial and at a pre-trial photographic lineup, Nguyen identified McLester as one of the two men who robbed him.

Nine days later, on October 30, 1999, at approximately 8:00 p.m., Torres was walking through the Forest Club Estates apartment complex when he was approached by McLester and two other men. The two men grabbed Torres while McLester took money out of his pockets. Torres testified that one of the other two men told him he had a gun in his pocket, "if I didn't give him the money." Torres reported the incident to Officer Myra Zenon of the Clayton County Police Department the following day. Both at trial and at a pre-trial photographic lineup, Torres identified McLester as the person who took money out

[1] For the purpose of sentencing, the counts of aggravated assault and armed robbery against Torres were merged.

of his pockets.

1. McLester alleges that the trial court erred in denying his motion to sever the counts involving Nguyen and Torres for separate trial.

Upon defense request, severance is mandatory only "if offenses are joined improperly, i.e., *solely* because they are of the same or similar character." (Punctuation omitted; emphasis in original.) *Byrd v. State*, 236 Ga. App. 485, 487 (4) (512 SE2d 372) (1999). However, severance is discretionary if the offenses are based on the same conduct, on a series of connected acts, or on a series of acts constituting parts of a single scheme or plan. *Camphor v. State*, 272 Ga. 408, 411 (529 SE2d 121) (2000); *Dingler v. State*, 233 Ga. 462, 463 (211 SE2d 752) (1975). In this case, the State met its burden of showing that the offenses were not joined solely on the basis they were of the same or similar character. Both incidents were closely related in time, occurring October 21 and October 30, 1999, respectively, and happened in the same apartment complex after dark, but at a time when people would still be walking about the complex. Further, in both robberies McLester worked with an accomplice and a firearm was involved. Accordingly, there was no abuse of discretion in the trial court's denial of McLester's motion to sever.

McLester also argues that even if severance was not mandatory, severance was still required because by joining the two cases the trier of fact would be more apt to overlook the weakness of each individual case. We disagree. Here,

> the facts in the two cases, as discussed above, are so similar that even if the two cases had been severed, each would have been admissible in the other case as evidence of a similar transaction. Accordingly, where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance.

(Citations and punctuation omitted.) *Rocha v. State*, 234 Ga. App. 48, 53 (5) (506 SE2d 192) (1998).

2. McLester next asserts that the State committed racial discrimination during jury selection by exercising four of its six peremptory strikes against African-Americans. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). We find no error in the denial of McLester's *Batson* motion.

> The United States Supreme Court has established a three-step test for evaluating challenges to peremptory strikes. Once the opponent of a peremptory challenge has

made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.

(Footnote omitted.) *Morris v. State*, 246 Ga. App. 260, 261 (540 SE2d 244) (2000); *Purkett v. Elem*, 514 U. S. 765, 767 (115 SC 1769, 131 LE2d 834) (1995).

The preliminary issue of whether [McLester] established a prima facie case of discrimination is moot because the prosecutor offered purportedly race-neutral explanations for the peremptory challenges and the trial court ruled in favor of the prosecution on the ultimate question of intentional discrimination. We therefore need only address the sufficiency of the prosecutor's explanations.

(Citations and punctuation omitted.) *Williams v. State*, 236 Ga. App. 190 (1) (511 SE2d 561) (1999).

The prosecutor explained that he struck juror no. 38 because such juror stated that two of his sons and a sister had been prosecuted in the same trial court, that he was not happy with the district attorney's office or the court, and that he did not feel his relatives had been treated fairly by the court. The prosecutor stated that he struck juror no. 64 because such juror had been stopped on two different occasions by police for allegedly no reason and had a previous bad experience with law enforcement. The prosecutor further stated that while juror no. 64 was describing his previous unpleasant encounters with police, he "acted like something was wrong with him like he was wound up too tight and he kept his arms crossed." The prosecutor stated that juror no. 69 had revealed that his daughter was a defendant in the same county the previous year on an assault charge and was not treated fairly. The prosecutor stated that he did not realize that juror no. 80 was an African-American, but that he struck her from the jury panel because she did not appear to understand the questions that were asked and that she kept repeating that her nephew was a bank robber.

The trial court correctly resolved the step 2 question when it ruled that the prosecutor gave race-neutral explanations for striking the jurors. "A neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason . . . will be deemed race neutral." (Punctuation and footnote omitted.) *Morris*

*v. State*, supra at 262.

In step 3, "the court must evaluate the persuasiveness of the justification for exercising the strike and determine whether the opponent of the strike carried his burden of proving purposeful discrimination." (Citation, punctuation and footnote omitted.) *Morris v. State*, supra at 262. "The trial court's decision on a *Batson* motion rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Citation and footnote omitted.) Id.

McLester offered no argument as to why he believed that purposeful discrimination had occurred as to juror nos. 38 and 69. As to juror no. 64, McLester argued that juror nos. 65 and 35, who were not African-American, were not struck even though they reported bad experiences with police. However, the prosecutor stated that he did not strike juror no. 65 because he appeared nonchalant about a speeding ticket that he had received nine years ago, which he did not feel was warranted. However, juror no. 64, whom he did strike, indicated he had several bad experiences with police, the last as recently as one year ago and was very defensive in his body language while describing his alleged bad encounters with police. The prosecutor further stated that he did not recall juror no. 35 reporting that he had any negative encounters with police. As to juror no. 80, the only argument offered by McLester was that he felt such juror understood the questions asked, but was unable to hear sufficiently. Under the facts as set forth here, the trial court's finding that McLester did not carry his burden of proving purposeful discrimination is not clearly erroneous.

3. McLester next challenges the sufficiency of the evidence as to the counts of armed robbery and aggravated assault against Nguyen and the count of armed robbery against Torres. He contends that the trial court erred in denying his motion for directed verdict.

The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testi-

mony of the witnesses, including the State's witnesses, are a matter . . . for the jury to resolve.

(Punctuation and footnote omitted.) *Yarbrough v. State*, 241 Ga. App. 777, 780-781 (4) (527 SE2d 628) (2000).

(a) As to the offenses against Nguyen, McLester asserts the State failed to prove identity beyond a reasonable doubt. We disagree. Both at the pre-trial photographic lineup and at trial, Nguyen unequivocally identified McLester as one of his assailants. We are mindful that Nguyen initially described McLester, who is over six feet tall, as being approximately five feet six inches tall and weighing 170 pounds, and at the pre-trial photographic lineup, stated that McLester appeared "heavier" in the photograph than he did the night of the incident. However, at trial, Nguyen testified the reason that he misjudged McLester's height was, as a native of Vietnam, he still had trouble converting measurements from the metric measurements to feet and inches. It was for the jury to determine the weight and credibility of Nguyen's testimony. *Sanders v. State*, 242 Ga. App. 487, 491 (530 SE2d 203) (2000). The evidence of McLester's identity is sufficient to support the jury's verdict that McLester was guilty beyond a reasonable doubt.

(b) McLester argues that there was no evidence presented that the crime of armed robbery had ended before McLester last pointed the weapon at Nguyen. Thus, there was insufficient evidence to support McLester's separate conviction for aggravated assault. We disagree.

The evidence supporting McLester's conviction for aggravated assault was Nguyen's testimony that, once the armed robbery was completed, his assailants walked several steps away from him. At this point, Nguyen asked them to keep the money and throw his wallet to him. McLester, then, turned around and pointed his gun at Nguyen and told him to "shut up." See *McCulley v. State*, 273 Ga. 40, 43 (537 SE2d 340) (2000) (the felony of aggravated assault has occurred when a firearm is pointed at the victim placing him in reasonable apprehension of immediate violent injury). A rational trier of fact could reasonably have concluded that the crime of armed robbery was completed before McLester committed the aggravated assault upon Nguyen by pointing a gun at him.

(c) Lastly, McLester argues that there was insufficient evidence to support his conviction for armed robbery as to Torres because Torres testified on direct examination that, "[i]n that moment everything was [moving] very quickly, but I think I did see a gun." However, on cross-examination, Torres testified that one of McLester's co-assailants stated, "he had a gun in [his] pocket if [Torres] did not give him the money." "Circumstantial evidence may establish the pres-

ence of a weapon during a robbery even though the weapon is unseen. [Cit.]" *Maddox v. State*, 238 Ga. App. 598 (1) (521 SE2d 581) (1999).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED APRIL 10, 2001.

*Stanley W. Schoolcraft III*, for appellant.

*Robert E. Keller, District Attorney, Jack S. Jennings, Assistant District Attorney*, for appellee.