## A11A0540. WILLIS v. THE STATE.
### (710 SE2d 616)

ELLINGTON, Chief Judge.

A Fulton County jury found Dexter Willis guilty beyond a reasonable doubt of three counts of armed robbery, OCGA § 16-8-41 (a). Following the denial of his motion for a new trial, Willis appeals, contending that the evidence was insufficient and that the trial court erred in denying his motion to sever the offenses, in denying his motion to exclude the victims' identification, in admitting testimony about a handgun, in denying his motion for a mistrial based on prosecutorial misconduct, in instructing the jury, in imposing a sentence of life imprisonment without parole, and in denying his motion for a new trial based on ineffective assistance of counsel. For the reasons explained below, we affirm.

1. Willis contends that the evidence was insufficient. On appeal from a criminal conviction, the appellate court

> view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Viewed in the light most favorable to the verdict, the evidence shows that, on three separate occasions within a three-week period, Willis used a revolver to rob a solitary pedestrian during daylight hours, all in the same part of the city.[1]

On the morning of July 3, 2002, the first victim was standing alone at a bus stop near the Maple Creek Apartments on Bolton Road when a man approached him, put a .38 caliber revolver to his head and told him to throw his money on the ground. The victim saw that there were bullets in the cylinder of the robber's handgun. After taking the victim's money, the robber told the victim to walk away

---

[1] This recitation of facts is based in part on evidence which Willis contends the trial court erroneously admitted. We have rejected Willis's evidentiary challenges for the reasons discussed in Divisions 3 and 4, infra.

and then fled on foot. On July 9, 2002, the victim looked through two books of mug shots, saw a photograph of Willis in the second book, and identified him as the robber.

On the morning of July 14, 2002, the second victim was walking toward a bus stop on Childress Drive at Landrum Drive when a man approached her, pointed a black revolver at her, and demanded her purse and jewelry. After taking her property, the robber fled on foot. Three weeks after being robbed, the victim identified Willis as the robber in a six-person photo array.

At about 6:30 p.m. on July 25, 2002, when it was still daylight, the third victim was walking alone on Venetian Road near Cascade Road when a man approached her, put a black revolver in her face, and told her to drop her purse and all of her money on the ground. He picked up her purse, which contained her cell phone, told her to leave in one direction, and then fled on foot in the opposite direction. Three days after being robbed, the victim identified Willis as the robber in a photo array.

On July 26, 2002, the first victim saw Willis, whom he recognized as the man who robbed him, walking in the same neighborhood as the robbery and then leaving the area in a black Chevrolet Blazer. The victim called the police and, as he stood talking to a police officer about his report, Willis drove past them in the Blazer, and the victim pointed out the vehicle to the officer. Officers stopped the Blazer a short distance away. In conducting a pat-down for officer safety, an officer found a 9mm handgun in Willis's waistband. Officers then took Willis to where the victim was waiting, and the victim identified Willis as the robber. After arresting Willis, officers inventoried the contents of the vehicle and found a loaded .38 caliber revolver and a cell phone. An officer determined that the cell phone belonged to the third victim.[2]

At trial, each of the victims identified Willis as the man who robbed them.

The evidence was sufficient for the jury to find Willis guilty beyond a reasonable doubt of using a handgun to rob each of the victims. *McLester v. State*, 249 Ga. App. 71, 75 (3) (a) (547 SE2d 709) (2001).

2. Willis contends that the trial court erred in denying his motion to sever the offenses. Willis argues that the failure to sever the offenses prejudiced him because it allowed the jury to use his

---

[2] At trial, an officer testified that he conclusively determined that the third victim owned the cell phone that was found in Willis's possession the day after the third victim was robbed, by examining the cell phone and by calling the last number listed in the call log. In addition, the third victim testified that she had programmed her home number into her cell phone contact list and labeled it, "Home."

possession of the third victim's cell phone as evidence that he was the person who robbed the first and second victims.

A trial court engages in a two-part inquiry when considering a motion to sever.

> A trial court must first determine whether the offenses are joined solely because they are of the same or similar character. If they are, severance is mandatory. If they are not, the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense. . . . With regard to the first inquiry, offenses have not been joined solely because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another, i.e., when they are so strikingly similar as to evidence a common motive, plan, scheme or bent of mind. Thus, severance is within the trial court's discretion when the offenses are so similar as to show a common scheme or plan. Such similarity may be manifest by close connections between the time, location, and modus operandi of the offenses. . . . With regard to the second inquiry, the trial court considers whether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense.

(Citations, punctuation and footnotes omitted.) *Fielding v. State*, 299 Ga. App. 341, 342-343 (1) (682 SE2d 675) (2009). In such a case, we review the trial court's determination for abuse of discretion. *Gadson v. State*, 223 Ga. App. 342, 344 (3) (477 SE2d 598) (1996).

As set forth above, the three robberies in this case took place in a limited geographical area within four weeks of each other. Each involved a man approaching a lone pedestrian during the daytime, pointing a revolver at the victim, and demanding that the victim throw his or her money and property on the ground, and then fleeing on foot. The modus operandi of the robberies was strikingly similar, allowing the trial court the discretion to deny the motion to sever. As the trial court observed, the evidence was far from complex and posed no significant risk of jury confusion. Therefore, the trial court did not abuse its discretion in denying Willis's motion to sever. *Dickerson v. State*, 304 Ga. App. 762, 765 (1) (697 SE2d 874) (2010); *Fielding v. State*, 299 Ga. App. at 343 (1).

3. Willis contends that the trial court erred in denying his motion to exclude the in-court identification by each of the victims as being tainted by unduly suggestive pretrial identifications.

(a) A conviction based on eyewitness identification at trial

following a pretrial identification will be set aside only if the pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Waddell v. State*, 277 Ga. App. 772, 777 (4) (627 SE2d 840) (2006); *Selbo v. State*, 186 Ga. App. 779, 781 (368 SE2d 548) (1988). Even if a pretrial identification is tainted by an impermissibly suggestive identification procedure, a subsequent in-court identification is admissible if it does not depend upon the prior identification but has an independent origin. *Doublette v. State*, 278 Ga. App. 746, 749 (1) (629 SE2d 602) (2006); *Selbo v. State*, 186 Ga. App. at 781. Here, the record shows that each of the victims' identification of Willis had such an independent origin. Each of the victims observed Willis face to face in full daylight and identified his photograph within days of being robbed. In addition, the first victim identified Willis as he drove by in a car. Accordingly, the trial court did not err by denying Willis's motion to exclude the identification testimony. *Doublette v. State*, 278 Ga. App. at 749 (1); *Selbo v. State*, 186 Ga. App. at 781.

(b) In addition, to the extent Willis contends that the officers lacked a legally sufficient basis to stop his vehicle and, therefore, that the first victim's pretrial and in-court identification were the products of a violation of his rights under the Fourth Amendment, the record shows that the officers had facts sufficient to stop Willis after the victim literally pointed out Willis to an officer as the person who robbed him. *Grabowski v. State*, 234 Ga. App. 222, 225 (4) (507 SE2d 472) (1998). Accordingly, this argument lacks merit.

4. Willis contends that the trial court erred in overruling his objection to an officer's testimony that he and another officer recovered a 9mm handgun from Willis when they arrested him. Willis contends that the State offered perjured testimony about the weapon, either at a pretrial hearing on his motion to suppress or at trial, because one officer testified at the hearing that *he* patted down Willis and found the gun, while a different officer testified at trial that *he* patted down Willis. Our review of the record suggests that there is no basis for concluding that either officer committed perjury. Rather, it appears that the memory of one of the officers may have faded as to this detail during the two years that elapsed between Willis's arrest and trial. Although the discrepancy may have given Willis the opportunity to impeach the credibility of the officer who testified at trial by disproving a fact to which he testified[3] (that is, that he performed the pat down), which Willis did not opt to do, the fact that his recollection of the events differed from the other

---

[3] See OCGA § 24-9-82 ("A witness may be impeached by disproving the facts testified to by him [or her].").

418

officer's pretrial testimony did not render his testimony about the gun inadmissible. Rather, the matter was one of credibility for the jury to resolve. We find no error.

5. Willis contends that there were several instances of prosecutorial misconduct that resulted in reversible error.

During cross-examination, the prosecutor attempted to challenge Willis's alibi by showing that he could not identify the highways and roads he traversed in the course of an errand he claimed to be running at the time of one of the robberies. The prosecutor asked Willis if, after he passed South DeKalb Mall, he took the highway entrance ramp on the right. When Willis replied, "yes," the prosecutor said, "Okay. That's [I-]285. Now we're getting somewhere." Willis's counsel objected that the prosecutor was testifying, and the prosecutor withdrew the question and rephrased it. The prosecutor asked Willis to identify the restaurants that are near a particular entrance to South DeKalb Mall. When he responded that he thought there was a Checkers, a Taco Bell, and a McDonald's, the prosecutor asked, "if I were to tell you, Mr. Willis, that I lived out there, and the only thing there is a QuikTrip and a Church's, would that surprise you?" Willis's counsel again objected to the prosecutor's testifying, and the trial court overruled the objection but instructed the prosecutor to "move on." The prosecutor again contradicted Willis's responses on a similar question, asking, "Would it surprise you to learn there's only a Home Depot and a Mrs. Winner's in that direction?" The trial court spontaneously disallowed the question. Willis's counsel did not move for a mistrial or ask for curative instructions, nor did she object during the State's closing argument, when the prosecutor attacked Willis's credibility by referring to his inability to answer questions about his route.

Certainly, the prosecutor should not have been injecting facts that were not in evidence,[4] but "prosecutorial misconduct is a serious charge, and[,] once appellant raises a charge of prosecutorial misconduct, he has the duty to prove it by the record and by legal authority." (Citation and punctuation omitted.) *Colley v. State*, 225 Ga. App. 198, 201 (3) (483 SE2d 355) (1997). Willis identified only one allegedly improper statement by the prosecutor where the trial

---

[4] See OCGA § 17-8-75 ("Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender."); *Sprayberry v. State*, 174 Ga. App. 574, 578 (5) (330 SE2d 731) (1985) ("[T]he introduction of facts before the jury which are not in evidence . . . require[s] the application of remedies such as mistrial or rebuke.") (citations omitted).

court overruled Willis's objection or refused to take requested corrective action. Willis does not cite to any legal authority for his claim that that question rises to the level of prosecutorial misconduct sufficient to warrant a new trial. As to all of the remaining questions or statements Willis now identifies as amounting to reversible error, the record shows that Willis either failed to object or had an objection sustained. Therefore, there is no ruling by the trial court that is adverse to Willis for this Court to review. It is axiomatic that "this is a court for [the] correction of errors of law committed by the trial court where proper exception is taken[.]" (Citation and punctuation omitted.) Id. Therefore, we will not reverse a conviction based on alleged prosecutorial misconduct where the defendant did not take proper exception or where the defendant received a favorable ruling on any objection or requested corrective action.

6. Willis contends that the trial court erred in giving the pattern jury instruction regarding recent possession of stolen property.[5] Specifically, Willis contends that, because the State never asked the third victim to identify the cell phone as the one that was stolen from her, there was no evidence that he possessed stolen property and, therefore, that the instruction was not adjusted to the evidence.[6] This is incorrect. There was evidence from which the jury could find that the cell phone belonged to the third victim, as recounted in Division 1, supra.

7. Willis contends that the trial court erred in failing to instruct the jury that it had to make an individual determination of guilt on each separate offense involving a different victim. Willis fails to show, however, that he requested such an instruction. With certain exceptions, it is not error for a trial court to fail to give a jury instruction absent a written request. *Colbert v. State*, 263 Ga. App. 193, 194 (2) (587 SE2d 300) (2003).[7]

8. Willis contends that the trial court erred in imposing a sentence of life imprisonment without parole because the court relied on a previous conviction where he was not represented by counsel.[8] The record shows that Willis first raised this issue regard-

---

[5] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.62.30 (recent possession of stolen goods) (4th ed., updated 2010).

[6] *Strobhert v. State*, 241 Ga. App. 354, 356 (1) (526 SE2d 863) (1999) (The jury instructions in a criminal trial should be legally correct, tailored to the indictment, and adjusted to the evidence admitted in court.).

[7] See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991) ("The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge[,]" although the trial court "need not specifically charge on an affirmative defense when the entire charge fairly presents the issues, including the defendant's theory, to the jury.") (citations omitted).

[8] *Scott v. State*, 250 Ga. 195, 198 (1) (d), n. 4 (297 SE2d 18) (1982) ("[A]n uncounseled

420

ing his conviction, in DeKalb County Case No. 93-CR-2382, of possession of a firearm by a convicted felon in his motion for a new trial. In response, the State offered evidence that that case was tried before a jury, that Willis exercised his constitutional right to represent himself, and that appointed standby counsel was available to assist him at trial.[9] Because the record does not support Willis's assertion that the conviction was obtained in violation of his constitutional right to counsel, this argument lacks merit.

9. Willis contends that he received ineffective assistance of counsel in several respects and, therefore, that the trial court erred in denying his motion for a new trial.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). In analyzing the prejudice element, "[t]he question is whether there is a reasonable probability that,

---

felony conviction cannot be used for the enhancement of punishment under a state recidivist statute.") (citation omitted); *Blaylock v. Hopper*, 233 Ga. 504, 505-506 (1) (212 SE2d 339) (1975) (accord); *Tanner v. State*, 230 Ga. App. 77, 79 (4) (495 SE2d 315) (1997) (Once a recidivism defendant objects to evidence of prior convictions on the basis that the defendant was not represented by counsel, the State bears the burden of establishing the validity of convictions it relies upon in arguing for recidivist treatment, and a waiver of counsel cannot be presumed from a silent record.); but see *Nash v. State*, 271 Ga. 281, 285 (519 SE2d 893) (1999) (If the State carries its burden of proving both the existence of prior guilty pleas to offenses the State relies on for seeking recidivist punishment and that the defendant was represented by counsel in such proceedings, "the presumption of regularity is then applied and the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. . . . If the defendant is able to present evidence that a constitutional infirmity exists, then the burden of proving the constitutionality of the plea shifts to the State.") (citations omitted).

[9] See *Merritt v. State*, 222 Ga. App. 623, 623-624 (475 SE2d 684) (1996) (Although a criminal defendant has a constitutional right to be represented by counsel, a defendant also has a constitutional right to reject such assistance and to represent himself or herself. If the defendant chooses self-representation, the trial court may appoint standby counsel to assist the defendant as desired.).

absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." (Citation and punctuation omitted.) *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

(a) Willis contends that his counsel's request for the pattern jury instruction that included a witness's degree of certainty as a factor the jury could consider in assessing the reliability of a witness's identification testimony, which the trial court gave, constituted deficient performance, and that he was prejudiced by counsel's error. In 2005, a year after Willis's trial, the Supreme Court of Georgia ruled that giving the "level of certainty" pattern instruction constituted reversible error when the only evidence linking the defendant to the crime was eyewitness testimony. *Brodes v. State*, 279 Ga. 435, 442-443 (614 SE2d 766) (2005). Pretermitting whether counsel's failure to anticipate the *Brodes v. State* ruling constituted deficient performance, we conclude that Willis failed to show that he was prejudiced by the request, given the other evidence linking him to the crimes, including his possession of the third victim's cell phone and a revolver matching the description of the one used in all three robberies. *Fagan v. State*, 283 Ga. App. 784, 788 (2) (643 SE2d 268) (2007).[10]

(b) Willis contends that the prosecutor commented at trial on his exercise of his right to remain silent by asking him on cross-examination: "[On July 26, 2002, you knew you were going to be charged with some crimes] and[,] at that time, right after all this happened, you didn't collect information or write down information that would back up this [alibi] story you're telling in court today for the first time?" In order for remarks to constitute an impermissible comment on the defendant's silence, "there must be a finding that the prosecutor's manifest intent was to comment on [the defendant's] failure to testify or that the jury would naturally and necessarily understand the remarks as a comment on [the defendant's] silence." (Citation and punctuation omitted.) *Rosser v. State*, 284 Ga. 335, 337 (4) (a) (667 SE2d 62) (2008). We conclude that the prosecutor's question in this case did not imply that Willis should have spoken to police officers or other government agents between his arrest and the trial.[11] And, because Willis did testify at trial, the

---

[10] See also *Swanson v. State*, 282 Ga. 39, 44 (5) (644 SE2d 845) (2007) (It was highly probable that the trial court's error in giving a "level of certainty" instruction did not contribute to the jury's verdict where there was other significant evidence corroborating the eyewitness's identification and where the trial court thoroughly instructed the jury about the State's burden of proving the defendant's identity as the perpetrator beyond a reasonable doubt and about other considerations relevant to the issue of identity.).

[11] Cf. *Pearson v. State*, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004) (Arguing that, if a person was legally justified in killing someone, he would tell the police his side of the story immediately and not wait until trial to claim self-defense constituted an impermissible

question cannot be construed as a comment on his failure to testify at trial. Because the prosecutor's question was unlikely to be interpreted as a comment on Willis's silence, the failure of Willis's trial counsel to object to this question does not constitute deficient performance. Id.

(c) Willis contends his trial counsel was ineffective based on her failure to object to the use of his DeKalb County conviction for recidivist punishment. Because the record does not show that the conviction was obtained in violation of his constitutional right to counsel, for the reasons discussed in Division 8, supra, counsel's failure to object did not constitute ineffective assistance. *Copeland v. State*, 281 Ga. App. 11, 14 (3) (b) (635 SE2d 283) (2006) ("The failure to make a meritless objection does not amount to ineffective assistance of counsel.") (citation omitted).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED APRIL 26, 2011 — 

*Kirby Clements, Jr.*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

comment on his right to remain silent.); *Boivin v. State*, 298 Ga. App. 411, 414-415 (3) (680 SE2d 415) (2009) (Asking a defendant whether he had shared certain information concerning his defense with law enforcement officers constituted an impermissible comment on his right to remain silent.).